## 30834. BAKER v. THE STATE.

Hall, Justice.

The main question raised by Baker in this appeal from his murder conviction is the scope of the word "felony" in Georgia's felony murder statute. Code Ann. § 26-1101 (b).

Baker was indicted in two counts, for malice murder and felony murder in the shooting death of Roger Clark. The state's trial evidence tended to show that Baker shot Clark through the heart a few moments after firing an earlier shot over the heads of Clark and another man. The state's evidence indicated that the shooting was entirely unprovoked, although Clark was severely intoxicated and had wakened Baker in Baker's bedroom before 5:30 a.m. to collect an alleged debt Baker owed him. The state introduced a statement by Baker which he later repudiated in his testimony. The statement acknowledged that he knew that the person in his room was Clark, and he shot to frighten him because he and Clark indulged in that sort of horseplay though a gun had never been involved before. The statement itself referred to and repudiated an earlier contradictory statement to police, in which Baker had said he shot when he was wakened by someone he thought was an unknown prowler. In Baker's trial testimony he returned to the prowler statement saying that he meant no harm to anyone but fired the shot to frighten away an unknown intruder who awakened him. Baker was convicted of felony murder, and sentenced to life imprisonment.

The reasoning underlying the felony-murder count was that the death was caused by Baker in the commission of an aggravated assault on Clark (Code Ann. § 26-1302) which is a felony. Baker argues that this charge relieved the state of the necessity for proving malice (the aggravated assault suffices in lieu of malice to produce a murder charge), and that felony murder should never be predicated upon an underlying felony which is itself a part of the homicide. These arguments were advanced below in a demurrer to the indictment, the overruling of which is claimed in Enumeration 1 of this appeal to have been error. This enumeration raises for discussion some real problems in the felony murder concept.

1. With respect to the operation of most state felony murder statutes, there are two acknowledged problems. We emphasize that both are policy problems: neither is of constitutional dimension. One is that absent some limitations on the felonies which can invoke the rule, even nondangerous felonies in the pursuit of which a defendant cannot reasonably be thought to have manifested a man-endangering state of mind, can turn an accidental death into felony murder. This we may call the nondangerous felony problem. The second problem is that where the homicide grows out of an initial aggressive act which is itself a felony, the death becomes murder regardless of whether the aggressive act really was done with the intention to cause death or great bodily injury. For example, under Georgia law an assault with a deadly weapon is an aggravated assault which is a felony. Code Ann. § 26-1302. Therefore, if a defendant claims that he meant only to shoot over another's head to frighten him, (an aggravated assault) but accidentally hits and kills him, the underlying aggravated assault invokes the felony murder rule and the death is murder, even if the jury believes that there was no intent to kill nor even to injure. This hypothetical parallels the actual facts of *Leutner v. State,* 235 Ga. 77 (218 SE2d 820) (1975), in which this court affirmed a felony murder conviction. This is referred to by commentators as the merger problem — the underlying assault should properly be "merged" into the homicide and the entire transaction

analyzed for the presence or absence of malice, rather than allowing the state to bootstrap practically all killings with dangerous weapons into murders simply by showing that the assault out of which the death arose was a felony.

Actually, from a justice standpoint the merger problem is less acute than the nondangerous felony problem, because in merger situations at least there is some initial reckless or assaultive act from which death flows, whereas in the latter problem the death could be a mere fluke which under the statute would become felony murder. For example, in Georgia we might "convict a person of murder for a death occurring during the commission of a crime such as bribery, vandalism to a place of worship, possession of tools for the commission of a crime, forgery, or conversion of leased property worth over $100, all of which normally are nonviolent felonies." Comment, Felony Murder in Georgia: A Lethal Anachronism? 9 Ga. St. B. J. 462, 480 (1973).

The following authorities analyze these and other problems in felony murder concepts, and offer some proposed statutes attempting to cure or alleviate certain difficulties. ALI, Model Penal Code, Art. 210 (App. May 24, 1962); Perkins on Criminal Law, pp. 33-36 (1975); 1 Warren on Homicide, § 74 (1938); Moreland, A Re-Examination of the Law of Homicide in 1971, 59 Ky. L. J. 788 (1971); Comment, Merger and the California Felony Murder Rule, 20 UCLA L. Rev. 250 (1972); Annot., Application of Felony-Murder Doctrine where the Felony Relied upon is an Includible Offense with the Homicide, 40 ALR3d 1341 (1971).

The merger concept Baker argues has been summarized as follows: "The inherently dangerous limitation alone is not, however, sufficient to prevent the expansion of the felony-murder rule. Even within the class of inherently dangerous felonies, there is a potential for abuse. Allowing a felony which is an integral part of the homicide to activate the felony-murder rule will allow the jury to ignore the issue of malice in those cases — a majority of homicides — where there has been a felonious assault upon the victim. . . The development of the so-called 'merger doctrine' was one attempt to ensure that

the felony-murder rule had a rational basis of application. The merger doctrine limits the prosecution's option to proceed on a felony-murder theory by prohibiting the use of the felony-murder instruction when the felony is an integral part of the homicide. Under the merger doctrine developed in New York, the felony supporting a felony-murder instruction must be committed with a collateral purpose. For example, the felony-murder rule would apply to a homicide committed during a robbery; it would not apply to a homicide committed during a felonious assault on the victim. In the latter case, the felony would be merged into the homicide and thus would not support a felony-murder instruction." Comment, supra, 20 UCLA L. Rev., pp. 259, 260.

There are various reasons for which we conclude that we are not free to adopt the merger doctrine which appellant urges, but chief among them is the fact that as the Georgia homicide statutes are constructed, if an unlawful homicide is not malice murder nor felony murder, it must fit under the rubric of voluntary manslaughter or one of the two branches of involuntary manslaughter, or else go unpunished. The problem we encounter is that both voluntary and involuntary manslaughter are very narrowly defined by Georgia statutes; specifically, voluntary manslaughter encompasses *only* those killings done in "sudden, violent, and irresistible passion." Code Ann. § 26-1102. Involuntary manslaughter covers deaths in the commission of a lawful act in an unlawful manner (Code Ann. § 26-1103 (b)), and deaths caused in the commission of an unlawful act *other than a felony*. Code Ann. § 26-1103 (a). Therefore, no death caused by a felony can possibly fall within either branch of involuntary manslaughter, and it can fall under voluntary manslaughter only if done in passion. What is entirely missing in Georgia law is a "reckless homicide" or "negligent homicide" statute, covering, though not necessarily limited to, deaths occasioned by non-dangerous felonies or by assaultive acts done without "malice." Those states which have such a statute may adopt both the nondangerous felony reasoning and the merger analysis; and an unintended death can fit into the

reckless or negligent slot. The situation under Georgia law, however, is that a death growing out of an aggravated assault is either malice murder or felony murder, or else it is not punishable as a homicide.

This situation leads to the inevitable conclusion that, contrary to appellant's assertion, the Georgia legislature intended felony murder to encompass all felonies as "felony" is defined in Code Ann. § 26-401(e) and not just dangerous or forcible felonies. The legislative history of this provision is said to bolster this conclusion. Comment, supra, 9 Ga. S. B. J. 462, 482.

For the foregoing reasons, this conviction of felony murder was proper both under the law and the facts as they appeared in the record. There was no error in refusing to sustain the demurrer to the indictment. This result is consistent with our result in *Cain v. State,* 232 Ga. 804 (209 SE2d 158) (1974) in which, though the reported opinion is silent on this fact, the record shows that the only aggravated assault committed was committed on the homicide victim, and we affirmed a conviction of felony murder, allowing the aggravated assault on the victim to trigger that approach.

2. There is no merit to the claim that the trial court erred in overruling Baker's motion to quash indictment on the ground that he was not afforded a commitment hearing. *State v. Middlebrooks,* 236 Ga. 52 (222 SE2d 343) (1976).

3. Appellant has adduced nothing on this appeal which would tend to show that the admission of photographs of the homicide scene was improper under the applicable standards. E.g., *Floyd v. State,* 233 Ga. 280, 283 (210 SE2d 810) (1974).

4. As the discussion in Division 1 shows, the evidence was sufficient to support the verdict.

*Judgment affirmed. All the Justices concur, except Hill, J., who concurs specially, Jordan and Ingram, JJ., who concur in the judgment only and Gunter, J., who dissents for the reasons stated in his dissent in State v. Middlebrooks, 236 Ga. 52 (1976).*

SUBMITTED FEBRUARY 16, 1976 — DECIDED APRIL 20, 1976 — REHEARING DENIED MAY 4, 1976.

*Hatcher & Cook, Donald E. Strickland,* for appellant.

*William S. Lee, District Attorney, Loring A. Gray, Jr., Assistant District Attorney, Arthur K. Bolton, Attorney General, James L. Mackay, Staff Assistant Attorney General,* for appellee.

HILL, Justice, concurring specially.

Appellant urges that the General Assembly could not have intended that a person commits the crime of felony-murder when he causes the death of another, irrespective of malice, in the commission of any felony. Appellant points out that voluntary manslaughter is a felony (Code Ann. § 26-1102) and that the General Assembly could not have intended that a person who causes the death of another, irrespective of malice, while in the commission of voluntary manslaughter, would be guilty of felony murder. See Perkins, Criminal Law, p. 36 (1957).

The state responds by saying: "Clearly, the legislature did not intend that voluntary manslaughter, as defined in Chapter 26-1101 of the Georgia Criminal Code, should be considered a 'felony' under the felony murder provision." The state goes on, however, to urge that the felony here involved (aggravated assault) is a felony which will support an indictment for felony murder.

Because the case now before us does not raise the questions which would have to be resolved if voluntary manslaughter were involved, I concur in the judgment of the court.