## 42510. NORMAN v. THE STATE.
### (338 SE2d 249)

GREGORY, Justice.

Walter Norman was convicted of murder, aggravated assault, and five counts of burglary. He was sentenced to life imprisonment for murder, plus additional consecutive terms for the other counts.[1] We affirm.

At 1 p.m. on Sunday, November 27, 1983, security guard Albert Haynes was monitoring surveillance cameras at the Peachtree Center complex, which consisted of the Gas Light Building, Harris Tower,

---

[1] The crime was committed on November 27, 1983. The indictment was handed down on January 6, 1984. The jury returned a verdict on June 29, 1984, and the defendant was sentenced on July 2, 1984. A motion for new trial was made on August 3, 1984, and denied on April 5, 1985. A notice of appeal was filed on May 3, 1985. The record was received on July 16, 1985, and a transcript of the trial was filed in the Supreme Court on October 21, 1985.

Cain Tower and a shopping area, all interconnected. Haynes spotted a man dressed in jeans, jogging shoes, a ski jacket and a baseball cap on the second floor. He recognized the man as Walter Norman, a former security guard at the complex who had quit in August 1983. While employed there, Norman had access to master keys to the complex and was known to carry a gun in an ankle holster while on duty.

At around 1:30 p.m., Nancy Aldrich was in a suite on the 9th floor of the Harris Tower when she heard someone unlock a door and enter. She later identified the man as Norman. According to Aldrich, the man said he was looking for a friend and then left at her request.

At 3 p.m., Robert Carnes observed a man, whom he identified as Norman, on the 29th floor of the Harris Tower and informed security guards. Later, security guards Matthew Hunnicutt and Ronald Stanton, both uniformed and unarmed, staked out the 15th floor of the Harris Tower. Stanton stood in the east stairwell while Hunnicutt waited in the west stairwell. Stanton looked into the corridor and saw a man he identified as Norman exit the elevator. The man was carrying a brown case. Stanton then said, "Walter, Walter, Walter, what are you doing?" The man turned and headed for the west stairwell. He then crouched, took a gun from an ankle holster and fired at Stanton. The man ran into the west stairwell, and Stanton heard several shots. Hunnicutt was soon discovered on the stairwell mortally wounded.

During the afternoon 18 businesses in the Peachtree Center complex had been burglarized. There was no sign of forced entry into the offices. Police later found two bank bags filled with money, a radio-tv, a watch case, calculators and brief cases on the 14th floor of the Harris Tower, along with a baseball cap and ankle holster.

Norman was arrested that day at his home in Fayetteville. Hand-swabbings and hair samples were taken from him. State Crime Laboratory experts testified that the residue on Norman's hands was at a high level and consistent with having fired a weapon that day. His hair's microscopic characteristics matched those of a hair found in the baseball cap. Additionally, the baseball cap had "Walter" written in the bill.

Police also obtained a search warrant for Norman's home authorizing a search for and seizure of a .32 or .38 caliber pistol. During the search, police seized five to six handguns, including one .38 caliber. They also seized several rounds of ammunition and a brief case with a number of articles contained in it. A photograph was taken of the bedroom area where the weapons were found.

Bullets recovered at the crime scene and taken from Hunnicutt's body were fired by a .38 caliber weapon. A police officer testified at trial that Norman owned at least two .38 caliber weapons, and one round of the ammunition found at Norman's house was of a type sim-

ilar to the bullets that killed Hunnicutt.

At trial, Norman offered evidence to establish an alibi. David Freeman, a tenant at a house owned by Norman in Southeast Atlanta, testified that Norman had been at his home collecting rent at 12:48 p.m. on the day of the shooting. Norman also introduced into evidence a ticket to the Falcons-Packers football game scheduled at 4 p.m. that day, along with a baby bib he claims he purchased at a concession stand. An operator of the stand testified that she had sold out of the baby bibs by half time, which would have been around 5:30 p.m.

1. Norman contends that given the evidence of an alibi, the evidence produced by the prosecution was insufficient to support a verdict of guilty. However, a review of all of the evidence adduced at trial in the light most favorable to the jury's verdict shows that a rational trier of fact could have found Norman guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Norman claims the trial court erred in overruling his motion to suppress certain evidence seized by police from his home on the night of the shooting. He claims the first of the searches was conducted without a warrant, while the second search resulted in the seizure of items beyond the scope of particularity authorized by the search warrant.

As to the alleged first search, testimony at the suppression hearing revealed that police entered the living room of Norman's house to make an arrest with a valid arrest warrant. There is no evidence of any search or seizure of any evidence during the police presence. In fact, no evidence was introduced at trial which Norman claims resulted from the first search. After the arrest, Mrs. Norman called a lawyer who advised her to tell the police to leave. The police did depart and returned later with a valid search warrant.

The search warrant listed as the object of the search a .32 or .38 caliber handgun. During the search, police seized several handguns and a box of .38 caliber ammunition found with the weapons in a gun cabinet. Police also seized an ankle holster, a briefcase containing several items, and some personal papers. A photograph of the bedroom wall and cabinet where the guns and ammunition were found was also taken. Norman claims the seizure of the items other than handguns, and use of some of them as evidence prevented him from having a fair trial.

At trial, the guns, ammunition, and bedroom photographs were the only items resulting from the search that were tendered into evidence. Given the amount of evidence produced by the prosecution, the introduction into evidence of the .38 caliber ammunition and the photograph, if error, was harmless.

3. Norman contends the trial court erred by enforcing the rule of sequestration of witnesses as to his wife, while allowing a detective to remain in the courtroom at the prosecutor's table during the testimony of other prosecution witnesses, and then testify.

The detective in question was the chief investigating officer in Hunnicutt's murder. The prosecution asked the court to make an exception to the sequestration rule so that the detective could aid in the presentation of the State's case. A trial court is vested with the discretion to make such an exception and the discretion will not be reversed unless abused. *Davis v. State*, 242 Ga. 901 (3) (252 SE2d 443) (1979). Norman points to no exception from the rule as to his wife. The court did not abuse its discretion in sequestering her when it appeared she would be called as a witness.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 7, 1985.

*R. Allen Hunt,* for appellant.

*Lewis R. Slaton, District Attorney, Benjamin H. Oehlert III, Assistant District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Staff Assistant Attorney General,* for appellee.