S95A1710. CHAPMAN v. THE STATE.
(467 SE2d 497)

HUNSTEIN, Justice.

Wayne Chapman a/k/a Jimmy Slater was found guilty of the felony murder of Jason Webb with OCGA § 16-11-108 as the underlying felony; misuse of a firearm while hunting (OCGA § 16-11-108); hunting upon or discharging a weapon across a public road (OCGA § 27-3-10); two counts of involuntary manslaughter; and hunting deer with a firearm out of season (OCGA § 27-3-15). Chapman was sentenced to life imprisonment on the felony murder conviction. He appeals from the denial of his motion for a new trial.[1]

---

[6] *Jefferson v. Zant,* 263 Ga. 316, 317 (431 SE2d 110) (1993), cert. denied, ____ U. S. ____ (114 SC 1577, 128 LE2d 220) (1994).

[1] The homicide occurred on September 21, 1992. Chapman was indicted on June 21, 1993 in Haralson County. He was found guilty on October 13, 1993 and was sentenced on October 19, 1993. His motion for new trial, filed on November 5, 1993 and amended May 31, 1994 and May 23, 1995, was denied on June 29, 1995. A notice of appeal was filed July 7, 1995. The appeal was docketed on July 26, 1995. Oral arguments were heard on October 17, 1995.

1. The evidence established that Chapman and his 16-year-old employee, Jason Webb, went hunting for deer with firearms although Chapman knew it was archery season for deer. Chapman was armed with a 12 gauge shotgun loaded with double aught buckshot. Neither Chapman nor Webb was wearing safety clothing. Chapman parked his truck on a public road on which were located many residences and near woods frequented by children and pets. Chapman separated from Webb with the understanding that they would meet back at the truck. Chapman testified that as he neared his truck at twilight, he heard movement in the undergrowth and saw an object he believed to be a deer. Chapman fired his shotgun across the road and hit Webb, who was killed almost instantly. Chapman hid the body then drove to the victim's house, claiming the victim had failed to return to the rendezvous spot. After a six-hour search by family and law enforcement officers, Chapman "found" the body. Chapman gave three statements to the authorities, initially denying he shot Webb but later admitting he fired the shot that killed the victim.

The evidence adduced at trial was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Chapman was guilty of the charged crimes under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Relying on *Ford v. State*, 262 Ga. 602 (423 SE2d 255) (1992), Chapman contends that OCGA § 16-11-108 cannot serve as the predicate felony to a felony murder conviction. In *Ford*, the defendant was unloading a firearm when it fired and the shot went through the floor and killed a person in the apartment below. We reversed the felony murder conviction where the underlying felony was a "status offense" (such as possession of a firearm by a convicted felon) not inherently dangerous because, under the special circumstances of that case, the possession of the firearm could not reasonably have been seen as creating a "foreseeable risk of death." Id. at 603. See also *Brand v. Szabo*, 263 Ga. 119 (2) (428 SE2d 325) (1993). The court recognized that circumstances may exist under which a status offense felony may be considered dangerous. Id. See also *Roller v. State*, 265 Ga. 213 (2) (453 SE2d 740) (1995).

Unlike the status offenses contemplated in *Ford*, supra, the offense of misuse of a firearm while hunting requires a conscious disregard of a substantial and unjustifiable risk that an act or omission "will cause harm to or endanger" the bodily safety of another person. OCGA § 16-11-108 (a).[2] Recognizing a felony violation of OCGA § 16-

---

[2] OCGA § 16-11-108 (a) provides:

Any person who while hunting wildlife uses a firearm or archery tackle in a manner to endanger the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm to or

11-108 as a predicate to felony murder is consistent with the purpose of the felony murder rule, namely, " 'to furnish an added deterrent to the perpetration of felonies which, by their nature or by the attendant circumstances, create a foreseeable risk of death.' " *Ford*, supra at 603. We find no merit to Chapman's argument. See *Mainor v. State*, 259 Ga. 803, 806 (387 SE2d 882) (1990) (Benham, Justice, dissenting) (noting that under factually similar circumstances, "an indictment for felony murder with a violation of § 16-11-108 as the underlying felony would clearly lie, and a conviction would be authorized").

3. There was no fatal defect in Counts One and Two of the indictment requiring reversal. Count One charged Chapman with a misdemeanor violation of OCGA § 16-11-108. Chapman's conviction on that count was merged with the felony murder conviction and he was not sentenced on Count One. Count Two (felony murder) charged Chapman with causing the death of Webb while in the commission of a felony, expressly specifying OCGA § 16-11-108. The indictment sufficiently alerted Chapman that a felony violation of OCGA § 16-11-108 was the predicate felony for the felony murder charge. See generally *Brooks v. State*, 207 Ga. App. 477, 478 (428 SE2d 357) (1993).

4. Chapman contends OCGA § 16-11-108 cannot serve as the predicate offense for felony murder because the statute applies only where there is serious bodily injury or no injury and does not specifically provide for a violation where death results from the prohibited conduct. We see no reason, and Chapman cites no authority, to distinguish OCGA § 16-11-108 from all the other statutes, similarly lacking any reference to "death," which this Court has recognized as serving as predicate felonies for felony murder. See, e.g., *Crane v. State*, 263 Ga. 518 (436 SE2d 216) (1993) (felony murder predicated on aggravated assault with a deadly weapon, OCGA § 16-5-21 (a) (2)); *Sumrall v. State*, 264 Ga. 148 (2) (442 SE2d 246) (1994) (felony murder predicated on burglary, OCGA § 16-7-1 (a)); *Waugh v. State*, 263 Ga. 692 (437 SE2d 297) (1993) (felony murder predicated on criminal damage to property, OCGA § 16-7-22 (a) (1)).

5. We find no merit in Chapman's contention that using OCGA § 16-11-108 as a predicate felony to support felony murder constitutes cruel and unusual punishment because it allows the State to prosecute someone for murder as a result of mere negligence. For a violation of a statute to constitute a crime in Georgia, either criminal intention or criminal negligence must be present. OCGA § 16-2-1;

---

endanger the safety of another person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor; provided, however, if such conduct results in serious bodily harm to another person, the person engaging in such conduct shall be guilty of a felony . . . .

*Daniels v. State*, 264 Ga. 460 (2) (b) (448 SE2d 185) (1994). Chapman confuses negligence with the criminal negligence that is the basis of OCGA § 16-11-108.

> " 'Criminal negligence as used in the statutes of this State means not merely such negligence as might be the foundation of a damage suit, but reckless and wanton negligence and of such a character as to show an utter disregard for the safety of others who might reasonably be expected to be injured thereby.' [Cit.]" [Cit.]

*Helton v. State*, 216 Ga. App. 748 (455 SE2d 848) (1995).

6. We have carefully reviewed Chapman's remaining enumerations of error and find them to be without merit.[3]

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., and Sears, J., who dissent.*

SEARS, Justice dissenting.

I respectfully dissent. The facts in this appeal show that while hunting, Chapman heard movement in the forest undergrowth, which he believed indicated the presence of a deer. Chapman fired his rifle in the direction of the noise. As it turned out, the noise had not been made by a deer, but rather by Chapman's hunting companion, a 16-year-old friend of Chapman's teenage daughter. Sadly, the youth was shot and killed. There is no dispute that the killing was accidental and inadvertent. Nonetheless, because Chapman was guilty of felony misuse of a firearm while hunting under OCGA § 16-11-108 (a), the majority affirms his conviction for felony murder. For the reasons explained below, I believe this ruling to be in error.

By enacting OCGA § 16-11-108 (a), the legislature designated the offense of using a firearm in conscious disregard of a substantial risk, and thereby causing serious bodily harm, which includes death, as the felony of misusing a firearm while hunting, and made that crime punishable by a fine of $5,000 and/or imprisonment for one to ten years.[4] Thus, as part of Georgia's Criminal Code, the legislature has expressly provided for the disposition of homicides that are caused by the misuse of a firearm while hunting. Therefore, consistent with earlier opinions of this Court regarding the felony murder rule, I do not believe that the legislature intended that OCGA § 16-11-108 (a) be used to support a charge of felony murder.

---

[3] Chapman asserts error in the trial court's charge regarding the misuse of a firearm; the admission of testimony by a game warden; the failure to give, unrequested, a charge on mistake of fact; and ineffective assistance of counsel due to the failure to object to the admission of the game warden's testimony.

[4] OCGA § 16-11-108 (a).

1. The purpose of the felony murder rule is to relieve the State of the burden of proving premeditation and malice when the defendant causes the death of another while committing a felony other than murder.[5] The rationale behind the felony murder rule is that the defendant's malignant purpose is established by proof of the underlying felony.[6]

In Georgia, felony murder generally can be predicated upon a felony that itself was an integral part of the homicide. The reasoning for this was explained in the seminal case of *Baker v. State*.[7] In *Baker*, the appellant claimed that he intended to shoot over the victim's head in jest, but instead accidentally shot and killed the victim. The appellant argued that because his aggravated assault upon the victim was an integral part of the homicide, it should not be allowed to support a felony murder charge. Rather, the appellant argued that because the underlying felony — aggravated assault — was an integral part of the homicide, it should be "merged" into the murder charge, and the entire offense should then be examined for the presence of the malice required to support a murder conviction. To do otherwise, argued the appellant, would force the jury to convict on felony murder, even though it believed that there was no malice on the appellant's part and that the shooting was accidental.[8]

The *Baker* court rejected that argument, and also rejected wholesale adoption of the "merger doctrine." However, the reasoning behind that ruling is highly instructive in this appeal. The *Baker* court noted that under Georgia's statutory homicide scheme (as it then existed), an unlawful homicide had to be either felony or malice murder, or voluntary or involuntary manslaughter, "or else go unpunished."[9] The *Baker* court explained:

> The problem we encounter is that both voluntary and involuntary manslaughter are very narrowly defined by Georgia statutes; specifically, voluntary manslaughter encompasses *only* those killings done in "sudden, violent, and irresistible passion." . . . Involuntary manslaughter covers deaths in the commission of a lawful act in an unlawful manner . . . and

---

[5] *Lewis v. State*, 260 Ga. 404, 405, n. 2 (396 SE2d 212) (1990).

[6] Id.; see *Baker v. State*, 236 Ga. 754, 755 (225 SE2d 269) (1976).

[7] 236 Ga. 754 (225 SE2d 269) (1976).

[8] 236 Ga. at 755-756. The appellant in *Baker* was arguing for the adoption of what is commonly called the "merger doctrine," which disallows a felony murder instruction when the underlying felony is an integral part of the homicide. Under the merger doctrine, the felony supporting a felony murder charge must have been committed with a "collateral purpose." Otherwise, the underlying felony is merged into the murder charge. *Baker*, 236 Ga. at 757.

[9] 236 Ga. at 757. OCGA § 16-11-108 has been enacted since the *Baker* opinion was issued.

deaths caused in the commission of an unlawful act *other than a felony*. . . . Therefore, no death caused by a felony can possibly [be] involuntary manslaughter, and it can [be] voluntary manslaughter only if done in passion. . . . [Thus, t]he situation under Georgia law . . . is that a death growing out of an aggravated assault is either malice murder or felony murder, or else it is not punishable as a homicide. This situation leads to the inevitable conclusion that . . . the Georgia legislature intended felony murder to encompass all felonies as "felony" is defined in [the Code], and not just dangerous or forcible felonies.[10]

As made clear in this passage, the State may base a felony murder charge upon the commission of a felony, even one that is an integral part of the homicide itself and evidences no malice on the offender's part, when the legislature has not otherwise provided for criminal punishment when a killing results from the commission of the underlying felony.

However, an altogether different result occurs in situations where the legislature *has provided* for the criminal disposition of one who causes a death as part of committing a felony that is not part of Georgia's statutory murder scheme. For example, the legislature has expressly provided for the felony of vehicular homicide, which is defined, inter alia, as killing another while driving in a reckless manner, under the influence of stimulants, or while fleeing a police officer.[11] Notably, this Court has affirmed that an underlying felony charge of vehicular homicide *cannot* support a charge of murder, because the legislature has decreed that the offense of killing someone while driving a vehicle in a reckless manner is vehicular homicide, and has provided for the criminal disposition of individuals convicted of that felony offense.[12] Moreover, a homicide caused by the reckless operation of a vehicle *must* be prosecuted under the felony vehicular homicide statute, and *may not* be prosecuted as murder or involuntary manslaughter.[13]

---

[10] 236 Ga. at 758 (emphasis in original). In recent years, this Court has adopted a slightly modified version of the strict felony murder rule enunciated in *Baker*. See *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992); *Ford v. State*, 262 Ga. 602 (423 SE2d 255) (1992). The impact of this slightly modified version, however, has no bearing on this case.

[11] See OCGA § 40-6-393. The punishment prescribed for vehicular homicide is two to fifteen years, id., which is similar to that prescribed for felony misuse of a firearm.

[12] *State v. Foster*, 141 Ga. App. 258, 259 (233 SE2d 215), aff'd 239 Ga. 302, 302-303 (236 SE2d 644) (1977); see *Wallace v. Kemp*, 581 FSupp. 1471, 1479, n. 4 (MD Ga. 1984) (In Georgia, " 'recklessness' [in reckless driving] cannot constitute malice for [malice] murder purposes, [*because*] *another statute ha[s] expressly provided for homicides caused by [the] reckless operation of a vehicle*.") (emphasis supplied).

[13] *Foster*, 239 Ga. at 302; *Foster*, 141 Ga. App. at 259.

Accordingly, consistent with the reasoning enunciated in *Baker* and this Court's handling of felony vehicular homicide cases, it is apparent that when the legislature has provided for criminal disposition for homicides resulting from the commission of a felony that is not part of Georgia's statutory murder scheme, it does not intend for that felony to serve as the basis for a charge of felony murder. Rather, the legislature intends that homicides that result from the commission of such felonies be prosecuted *only* under the express statutory provisions made for those homicides.

This only stands to reason, because if Georgia's lawmakers did intend that a homicide resulting from the commission of a felony not included in Georgia's statutory murder scheme, for which the legislature has made special provision, could support a charge of felony murder, then the legislature would not have found it necessary to designate a punishment for that homicide. Rather, the legislature would simply allow such punishment to be dispensed under the felony murder statute. However, when the legislature has spoken on the punishment prescribed for this class of homicides, to allow a greater punishment to be inflicted is nothing short of circumventing the deliberate choice of the legislature.

2. When OCGA § 16-11-108 is examined in light of the principles discussed above, it becomes clear that it cannot support a charge of felony murder. As explained in the majority opinion, the legislature has defined the misuse of a firearm while hunting so as to (1) endanger others due to the conscious disregard of a substantial risk that such misuse could cause harm to others, and (2) grossly deviate from the standard of care that a reasonable person would exercise under similar circumstances, to be a misdemeanor.[14] Also noted by the majority, the legislature also has stated that if the misuse of a firearm while hunting results in "serious bodily harm" to another, then the offender is guilty of a felony.[15] However, what the majority opinion fails even to mention is that the legislature has decreed that felony misuse of a firearm shall be punishable by imprisonment for one to ten years and/or a fine of up to $5,000.[16]

It is patently obvious that death falls within the scope of "serious bodily harm," as that term is used in § 16-11-108.[17] Thus, it is inescapable that the legislature has provided in the Criminal Code for the

---

[14] OCGA § 16-11-108 (a).

[15] Id.

[16] Id. See majority opinion at n. 2.

[17] Indeed, in order for Chapman to have been convicted of the underlying felony in this case, death *must* be classified as "serious bodily harm." Otherwise, his conviction for felony misuse of a firearm while hunting cannot stand. To the extent that there is any ambiguity in this, it is fundamental that criminal statutes, when subject to more than one reasonable construction, are strictly construed against the State and in favor of an accused.

disposition of those who, due to their reckless or negligent misuse of a firearm while hunting, shoot and kill someone. The legislature has deemed those individuals to be guilty of a felony, and has prescribed the appropriate punishment for such felons to be imprisonment for up to ten years and/or a fine of up to $5,000.

Accordingly, the killing that took place in this case, unlike the killing that occurred in *Baker, will not* go unpunished if the felony murder rule is not invoked. To the contrary, the killing will be punishable *exactly as prescribed* by the legislature in OCGA § 16-11-108 (a). Therefore, the reasoning relied upon in *Baker* to support the proposition that "felony murder [encompasses] all felonies"[18] simply is not applicable to this particular case. Rather, this case is controlled by the reasoning of the *Foster* opinion — because the legislature has provided for the criminal disposition of those convicted of a killing as the result of a felony violation of § 16-11-108, the felony must be prosecuted under the legislature's express provision therefore, and the felony murder rule simply does not apply.[19]

The majority's failure to mention that the legislature has prescribed the appropriate punishment for felony misuse of a firearm while hunting is problematic, to say the least. I believe that it seriously discredits the validity of its holding. This Court is not free to disregard legislative pronouncements, and must adhere to them. The legislature has spoken clearly on what it intended to be the punishment for a homicide resulting from the felony misuse of a firearm. This Court is led astray, I believe, by a misperception that it is free to uphold a punishment greater than that decreed by the legislature. By affirming a misapplication of the felony murder rule in this case, the majority in this case has done exactly that. In so doing, I believe that the court has undone a choice deliberately made by the legislature, and has essentially nullified OCGA § 16-11-108 (a).

3. In accordance with the principles discussed above, it is clear that in providing for the felony misuse of a firearm while hunting, which includes homicides resulting from the commission of that felony, and in prescribing the appropriate punishment for that felony, the legislature intended that the felony be prosecuted *only* under § 16-11-108, and that the felony *cannot* serve as a basis for felony murder. Therefore, I would reverse the trial court and remand this matter for further proceedings, and I respectfully dissent.

---

[18] 236 Ga. at 758.

[19] The offenses cited by the majority in Division 4 of its opinion as examples of felonies that we have allowed to serve as a basis for felony murder also are distinguishable on this ground, as none of the offenses cited provide for the disposition of one who kills while committing the felony. Nor is a contrary result required by the dissenting opinion in *Mainor v. State*, 259 Ga. 803, 806 (387 SE2d 882) (1990), cited by the majority at p. 358, as that statement carries no precedential value, and is merely dicta.

I am authorized to state that Presiding Justice Fletcher joins in this dissent.

DECIDED FEBRUARY 5, 1996 —
RECONSIDERATION DISMISSED MARCH 11, 1996.

*Gammon & Anderson, W. Wright Gammon, Jr.,* for appellant.
*James R. Osborne, District Attorney, Jeffrey L. Ballew, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Wesley S. Horney, Assistant Attorney General,* for appellee.