## S97A0021. RUSSELL v. THE STATE.
(485 SE2d 717)

HINES, Justice.

Bobby Lee Russell appeals his conviction for malice murder in connection with the fatal shooting of Raymond Anderson.[1] He chal-

---

[12] *McClain,* supra.

[13] *Sterling,* supra.

[14] *Earnest,* supra.

[15] *McClain,* supra; *Burgess v. State,* 264 Ga. 777, 785 (450 SE2d 680) (1994).

[1] The fatal shooting of Raymond Anderson occurred on April 2, 1995. On July 27, 1995, Bobby Lee Russell was indicted for the malice murder of Anderson and the aggravated

lenges the sufficiency of the evidence, the State's exercise of peremptory strikes, the admission of photographs of the victim, and the effectiveness of trial counsel.

The evidence viewed in favor of the verdict showed that on the evening of April 2, 1995, Anderson received a telephone call that there was a disturbance across town possibly involving his cousin, Timothy O'Neal White. Anderson, White's sister and others drove to the scene. They arrived to find a large number of people gathered, and they witnessed several altercations among people in the crowd. Anderson and White attempted to stop some of the fighting by separating the combatants. After Anderson turned to walk away, Russell approached him and made a hostile statement to him. Anderson removed his hood and took his hands from his sweatshirt pockets. As Anderson faced Russell, Russell shot him in the chest at close range. Russell fled. Other gunfire erupted and White was wounded in the back. Anderson moved a short distance and then fell dead from the gunshot wound to his chest.

Russell admitted to police that he shot Anderson. He claimed, however, that Anderson was wielding a knife and that he shot him in self-defense. The police found cigarettes, matches, and a small pocketknife in Anderson's pockets. A box-cutting razor was found on the ground, but it was approximately 44 feet from Anderson's body.

1. Russell fails in his contention that the evidence was insufficient to support his conviction for malice murder. The fact that a box-cutting razor was found in proximity to the victim's body and its bloody trail, and that several defense witnesses testified that the victim menacingly wielded a blade in his hand, do not, as a matter of law, compel the conclusion that Russell acted in self-defense. State's witnesses testified to the contrary that the victim was completely unarmed and never threatened Russell. Witness credibility is to be determined by the jury, OCGA § 24-9-80, as is the question of self-defense when there is conflicting evidence on the issue. See *White v. State*, 263 Ga. 94, 97 (2) (428 SE2d 789) (1993); *Thomas v. State*, 239 Ga. 734, 735 (2) (238 SE2d 888) (1977). The evidence authorized the jury to find beyond a reasonable doubt that Russell did not act in self-defense in shooting Anderson and that he was guilty of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

assault by shooting of Timothy O'Neal White. Russell was tried before a jury in the Superior Court of Mitchell County on October 23-24, 1995, and was found guilty of the malice murder and acquitted of the aggravated assault. On October 24, 1995, Russell was sentenced to life imprisonment. He filed a notice of appeal on October 31, 1995, and the appeal was docketed in this Court on September 19, 1996. The case was submitted for decision without oral argument on November 11, 1996.

2. It was not error for the trial court to deny Russell's challenge under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). The opponent of a peremptory strike has the burden of establishing a prima facie case of purposeful discrimination by demonstrating that the totality of relevant facts raises an inference of discriminatory purpose. After a prima facie case is established, the proponent of the strike must articulate a race-neutral explanation for eliminating the juror at issue, and the explanation must be one that does not deny equal protection. *Whatley v. State,* 266 Ga. 568, 569 (3) (468 SE2d 751) (1996); *Jackson v. State,* 265 Ga. 897, 898 (2) (463 SE2d 699) (1995), citing *Purkett v. Elem,* 514 U. S. 765 (115 SC 1769, 131 LE2d 834), rehearing denied, 515 U. S. ___ (115 SC 2635, 132 LE2d 874) (1995). Contrary to Russell's contention, the State articulated concrete, tangible, and non-racial reasons for its challenged exercise of peremptory strikes against African-Americans.[2] See *Davis v. State,* 263 Ga. 5, 7 (10) (426 SE2d 844) (1993).

3. Russell likewise fails in his claim that the trial court abused its discretion in admitting into evidence two photographs of the victim (State's Exhibit Nos. 5 and 14) on the basis that their sole purpose was to inflame the jury. Pre-autopsy photographs are generally admissible to show the nature and extent of a victim's wounds. *Johnson v. State,* 266 Ga. 775, 778 (8) (470 SE2d 637) (1996); *Williams v. State,* 265 Ga. 681, 683 (5) (461 SE2d 530) (1995). Here, the photographs were introduced for that purpose as well as identification of the victim and the manner in which he died. Any gruesome or

---

[2] The State exercised five peremptory challenges against African Americans in selecting the sitting jury and one in regard to choosing the alternate. It articulated the following reasons for the strikes:

Prospective juror number 13, an African American woman, was challenged because her husband was a local politician, and there was concern that in response to his constituency there would be bias in favor of the defendant. Additionally, the woman and her husband were in a shooting incident involving the local police department.

Prospective juror number 18, an African American man, was removed because he was a convicted felon, had a brother serving time in prison, knew defendant Russell and his entire family, considered himself Russell's associate, and was the grandfather of two defense witnesses.

Prospective juror number 19, an African American woman, was challenged because she knew Russell, had grown up with members of his family, and indicated during voir dire that she had heard about the case.

Prospective juror number 25, an African American woman, was a mental health patient who was known to have committed aggravated assault on her boyfriend.

Prospective juror number 33, an African American man, was removed because he was friends with Russell's relatives and knew Russell, and initially failed to disclose this during voir dire. In addition, the man socialized with a defense witness and worked at an establishment that was a known drug location.

Prospective alternate juror number 36, an African American man, was challenged because he was believed to have been involved in a local shooting, was friends with Russell's relatives, and had heard about the case.

inflammatory aspect of the photographs stemmed entirely from acts of the defendant. *Bullard v. State*, 263 Ga. 682, 686 (5) (436 SE2d 647) (1993).

4. Russell raises the ineffective assistance of trial counsel for the first time in this appeal, through his appellate counsel who was appointed his attorney of record after the filing of the notice of appeal.[3] Thus, it must be concluded that the issue was presented at the earliest practicable moment, and the case is remanded to the trial court for a hearing and determination on the ineffectiveness claim. *Haas v. State*, 262 Ga. 169 (416 SE2d 88) (1992). Compare *Glover v. State*, 266 Ga. 183 (465 SE2d 659) (1996).

*Judgment affirmed and case remanded with direction. All the Justices concur.*

DECIDED APRIL 28, 1997.

*Ernie M. Sheffield, Billy M. Grantham*, for appellant.

*J. Brown Moseley, District Attorney, Robert R. Auman, Assistant District Attorney, Michael J. Bowers, Attorney General, Angelica M. Woo, Assistant Attorney General*, for appellee.

---

[3] The notice of appeal, filed on October 31, 1995, was prepared and signed by trial counsel. Inexplicably, new appellate counsel's name also appears on the notice of appeal; however, appellate counsel was not appointed Russell's counsel of record until July 17, 1996, pursuant to Russell's pro se motion to have trial counsel withdrawn. There is no indication in the record or by the parties of a professional association between the two attorneys.