## S00A0644. RITTER v. THE STATE.
### (532 SE2d 692)

THOMPSON, Justice.

Hughey Edward Ritter was convicted by a jury of one count of malice murder and four counts of felony murder in connection with the bludgeoning death of Jack Barnhill.[1] Ritter appeals from the denial of his motion for new trial, asserting that the trial court impermissibly allowed evidence of his character to be placed in issue at trial. We affirm his convictions. But because the court incorrectly sentenced Ritter for three counts of murder of a single victim, the sentences for felony murder are vacated.

On the day of the murder, Ritter made several visits to the home of Lori Chromi, his neighbor and friend. He stopped in briefly in the morning. He returned again at 3:30 p.m. in an intoxicated state, driving a van which he identified as belonging to "Jack." He told Chromi that Jack was "passed out drunk" inside the van. Ritter appeared anxious and he asked Chromi to pray for him. As he drove off, he told Chromi he was going to the victim's residence.

About 45 minutes later Chromi heard the squeal of tires and she went outside to see the same van in her carport. She observed Ritter through the window of the vehicle making a pounding motion, and heard him repeatedly shouting Jack's name. Fearing that Jack had had a heart attack, she asked Ritter if Jack was alive. Ritter responded, "he was five minutes ago." Chromi looked in the van and

[1] A six-count indictment was returned on May 1, 1996, charging Ritter with malice murder, felony murder in the commission of an armed robbery, felony murder in the commission of an aggravated assault, and three counts of felony murder in the commission of an aggravated battery. Trial commenced on October 2, 1996, and ended in a mistrial on the same day. Retrial began on May 24, 1999, and the jury returned its verdict on May 26, 1999. Ritter was acquitted of felony murder in the commission of an armed robbery, and convicted of the remaining counts. He was sentenced on the same day to life imprisonment for malice murder, and two consecutive terms of twenty years for two counts of felony murder. A motion for new trial was filed on June 22, 1999, and amended on November 12, 1999. The motion for new trial was denied on November 16, 1999. A notice of appeal was filed on December 9, 1999. The case was docketed in this Court on January 5, 2000, and was submitted for decision on briefs on March 6, 2000.

saw the injured victim who appeared to her to be dead. She screamed at Ritter, "what have you done." In response, Ritter exited the vehicle and held up a long stick which he then tossed into the van. Chromi summoned the police who arrived at the scene to find Ritter sitting beside the van. A bloody stick was retrieved from the van. After volunteering that he had spent the day with the victim, Ritter was arrested and taken into custody. Both the victim's wallet and a blank check signed by him were found in Ritter's possession.

Forensic evidence confirmed that the victim had been struck repeatedly with a firm object, consistent with the stick Ritter had displayed at the scene. The beating fractured the victim's skull and resulted in his death. Ritter's clothing was stained with the victim's blood in medium velocity impact stains, a pattern consistent with the type of beating inflicted on the victim. Blood pattern analysis also established that the beating occurred while the victim was lying on the floor of the van.

Ritter testified in his own defense as follows: He and the victim had begun drinking whiskey early on the day of the murder. At some point the victim passed out leaving his wallet on the seat of the van. Ritter took the wallet for safekeeping. Before the final visit to Chromi's house, Ritter stopped to purchase crack cocaine and he got out of the van to smoke it. When he returned to the vehicle he noticed that the victim was bleeding. He then drove to Chromi's house to summon help.

1. The evidence was sufficient to enable a rational trier of fact to have found Ritter guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. A first trial resulted in a mistrial during direct examination of the State's first witness, Lori Chromi. In that proceeding, Chromi testified that Ritter asked her if she knew of anyone who might have a gun they wanted to get rid of and said that they both could make some money if she did. The trial court granted Ritter's motion for mistrial on the ground that the evidence impermissibly placed his character in issue.[2] Upon return of the remittitur to the trial court, the case was reassigned to another judge due to the retirement of the original trial judge.

On retrial, the State filed a motion in limine seeking to introduce the statements which were ruled inadmissible in the first trial. The State argued that Chromi's testimony was relevant to motive

---

[2] Ritter unsuccessfully sought a plea in bar on double jeopardy grounds to prevent retrial. The denial of the plea in bar was affirmed on appeal to this Court. *Ritter v. State*, 269 Ga. 884 (506 SE2d 857) (1998). In a previous appeal, this Court affirmed an interlocutory ruling excluding Ritter's confession. *State v. Ritter*, 268 Ga. 108 (485 SE2d 492) (1997).

because the evidence would show that Ritter stole the victim's wallet in a desperate effort to obtain money to buy crack cocaine. Ritter argued that testimony concerning a gun impermissibly impugned his character since the crimes did not involve the use of a gun. The court concluded that the evidence was relevant to the issues at trial, and ruled it admissible even if it incidentally implicated Ritter's character.

At the second trial, Chromi was again called as a witness for the State. She testified that on the day of the murder, Ritter told her his son's birthday was approaching and that he wanted to get the child a bicycle. He asked Chromi if she knew anyone who had a gun to sell because he knew of a buyer and could generate some money.

Ritter challenges the admissibility of Chromi's statement, asserting that the ruling in the first trial was the law of the case which was binding on the second trial court. We disagree.

A trial court has "plenary power over its orders and judgments during the term at which they are entered, and may amend, correct, or revoke them, for the purpose of promoting justice." *Deen v. Baxley State Bank*, 192 Ga. 300, 303 (1) (15 SE2d 194) (1941). Accord *Bowen v. State*, 239 Ga. 517 (2) (238 SE2d 62) (1977). Likewise, a court retains broad discretion over interlocutory evidentiary rulings which may be modified at any time until entry of final judgment. See, e.g., *Tucker v. State*, 231 Ga. App. 210 (1) (b) (498 SE2d 774) (1998) (trial court may reverse a ruling on a pretrial suppression motion at any time during the pendency of the case). Similarly, our appellate courts have explained that "[t]he 'law of the case' rule is subject to the power of the court, and the court may, in a proper case disregard or correct its former decision where the cause remains pending before it." *Bradley v. Tattnall Bank*, 170 Ga. App. 821 (1) (318 SE2d 657) (1984).[3] This is so because " 'a trial judge should not court reversal because of the erroneous ruling of another judge any more than because of an erroneous ruling of his own.' " Id. at 824, quoting with approval 1B Moore's Federal Practice 127, § 0.404 [4-2]. Consequently, we hold that the doctrine of the law of the case does not limit the power of the trial court to reopen rulings previously entered during the same term of court or, as in this case, carried over from a previous term of court where the matter was not finally resolved, and where there has been no adjudication of the issue by an appellate court.[4] See generally *Bryant v. State*, 197 Ga. 641, 645 (1) (30 SE2d 259) (1944) (applying "law

---

[3] The rationale of *Bradley*, supra, was applied in *Maxwell v. State*, 262 Ga. 541 (3) (422 SE2d 543) (1992).

[4] While two appeals have been taken in the present litigation, in neither instance has the admissibility of Chromi's statement been considered or ruled on by this Court. *Ritter v. State*, supra, 269 Ga. 884; *State v. Ritter*, supra, 268 Ga. 108.

of the case" doctrine to rulings made by appellate courts in criminal cases).

3. The trial court did not abuse its discretion in admitting the challenged testimony as the evidence was relevant to Ritter's motive and state of mind, i.e., that the killing was motivated by the need for money. *Butler v. State*, 266 Ga. 537 (1) (468 SE2d 369) (1996). " 'Evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue. (Cit.)' [Cit.]" Id. at 538. Nor was the mere mention of a gun so inherently prejudicial as to outweigh the probative value of the evidence of motive. See *Whitener v. State*, 261 Ga. 567 (2) (407 SE2d 735) (1991).

4. The trial court sentenced Ritter to life imprisonment for malice murder and to two consecutive sentences of twenty years for two convictions of felony murder with the underlying felony of aggravated battery. " '[W]here there is a single victim, the defendant may be sentenced on either [malice murder or felony murder] but not both. (Cit.)' [Cit.]" *Malcolm v. State*, 263 Ga. 369, 371 (4) (434 SE2d 479) (1993). Since the trial court erred in imposing sentences for malice murder and the two alternative felony murder counts, the separate sentences for two counts of felony murder must be vacated. Id.

*Judgment affirmed in part and vacated in part. All the Justices concur, except Carley, J., who concurs in Divisions 1, 3, and 4, and in the judgment.*

DECIDED JULY 5, 2000.

*Leon Hicks*, for appellant.

*Robert E. Keller, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Wesley S. Wood, Assistant Attorney General,* for appellee.