## S04A0489. HAMES v. THE STATE.
### (598 SE2d 459)

CARLEY, Justice.

Joshua Hames was indicted on alternative counts of malice murder, felony murder by misusing a firearm while hunting, and felony murder while in the commission of aggravated assault. The grand jury also indicted him separately for the two underlying felonies. A jury acquitted him on the counts charging malice murder, felony murder during the commission of aggravated assault, and aggravated assault. However, it found him guilty of felony murder by the misuse of a firearm and on the separate count for that offense. Merging the underlying felony into the homicide, the trial court entered judgment of conviction on the jury's guilty verdict as to felony murder, and imposed a life sentence. Following the denial of a motion for new trial, Hames brings this appeal.[1]

1. Hames and his brother Sam went hunting on their parents' land. The two separated so as to hunt on different areas. Hames spotted something which, according to his subsequent statement and testimony, he mistook for a crouching animal, such as a bobcat or wildcat. In fact, what he saw was the victim, Sam. Hames aimed at the crouching figure through the scope on his rifle and fired, killing his brother. When construed most strongly in support of the jury's verdict, the evidence is sufficient to authorize a rational trier of fact to find Hames guilty of felony murder by the misuse of a gun while hunting. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Chapman v. State*, 266 Ga. 356, 357 (1) (467 SE2d 497) (1996).

2. During the execution of a search warrant, the police discovered handwriting on the wall of Hames' bedroom. Over his objection, evidence of this writing was admitted as relevant to the existence of

---

[1] The homicide occurred on October 11, 2002. The grand jury indicted Hames on November 8, 2002. The jury returned the guilty verdicts on January 30, 2003. The trial court entered judgment of conviction and imposed the life sentence on February 4, 2003. Hames filed a motion for new trial on February 19, 2003, which the trial court denied on August 11, 2003. Hames filed a notice of appeal on September 10, 2003, and the case was docketed in this Court on November 21, 2003. The appeal was submitted for decision on January 12, 2004.

a motive to kill his brother. The admission of this evidence is enumerated as error, but the jury acquitted Hames of an intentional homicide. The handwriting obviously does not relate to whether he violated OCGA § 16-11-108 (a) when he aimed and fired his gun. Under that provision, the intent to kill is irrelevant, and guilt depends upon whether the defendant used a firearm

> in a manner to endanger the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm to or endanger the safety of another person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation . . . .

"[T]he introduction of improper evidence that goes to motive is harmless error where there is a conviction for an offense requiring no motive. [Cit.]" *Stoudemire v. State*, 261 Ga. 49, 50 (3) (401 SE2d 482) (1991). Therefore, error, if any, in admission of the handwriting was harmless here.

The special concurrence misconstrues the holding in *Stoudemire*. This Court has cited *Stoudemire* for the proposition that "evidence of a defendant's motive which is not material to his criminal liability is irrelevant and inadmissible." *Brown v. State*, 270 Ga. 601, 602 (2) (512 SE2d 260) (1999). However, the dispositive issue there, as here, is whether the admission of such irrelevant and inadmissible motive evidence may be held to be "harmless error." In that regard, *Stoudemire* holds that, when the accused is convicted of a crime which does not require motive, the "harmless error" principle generally applies to an enumeration which asserts the erroneous admission of evidence as to that issue.

> However, the introduction in a homicide case of evidence of the existence of insurance wherein the defendant is the beneficiary where that evidence has no relevance to the charge has the enormous potential for so infecting and inflaming the trial process that fundamental fairness can be easily compromised.

*Stoudemire v. State*, supra at 50-51 (3). Thus, a limited exception to the "harmless error" rule exists in such cases when the State introduces irrelevant evidence of insurance. "[D]espite the fact that the introduction of motive evidence [is] harmless error, . . . prosecutors . . . undertake severe risk of reversal when attempting to inject evidence of an insurance policy without first establishing the required nexus." *Woodham v. State*, 263 Ga. 580, 582 (3) (439 SE2d 471) (1993). See

also *Givens v. State*, 273 Ga. 818, 822 (3) (546 SE2d 509) (2001); *Bryan v. State*, 271 Ga. 231, 232 (2) (518 SE2d 672) (1999). Thus, we do not "abandon" *Stoudemire* in this felony murder case, but, consistent with its holding, apply the "harmless error" principle to the introduction of motive evidence which does not involve insurance.

3. After the homicide, Hames was interviewed and gave a statement to the police. He contends that admission of the unredacted interview at trial was erroneous. Primarily, the parts to which he objects relate to questioning about his intent and motive to kill the victim. However, the only crime which is relevant to our consideration on appeal is misuse of a firearm while hunting. As to that offense, Hames admitted intentionally firing the fatal shot. The issue for the jury was whether doing so was a gross deviation from the standard of care that a reasonable person would exercise under the circumstances, which deviation endangered the bodily safety of the victim by consciously disregarding a substantial and unjustified risk of injury. Accordingly, even assuming that portions of the interview relating to intent and motive to kill were not admissible, any error in admitting them was harmless. *Stoudemire v. State*, supra at 50 (3).

The remaining portions of the interview which Hames attacks are comments by the interrogating officer which he contends were inadmissible expressions of opinion on his credibility. However, the officer was not testifying as a sworn witness in the case, and his contested statements during the interview appear to reflect only an aggressive interrogation technique designed to test the truthfulness of Hames' denial of any intent or motive to kill. See *Rowe v. State*, 276 Ga. 800, 803 (2) (582 SE2d 119) (2003). That technique proved unsuccessful in shaking Hames' story, as he continued to maintain that he fired in the belief that he was shooting a large cat. When Hames took the stand in his own defense, his testimony was consistent with his pre-trial statement. As demonstrated by the verdict acquitting him of malice murder and aggravated assault, the jury found that the State failed to carry its burden of proving beyond a reasonable doubt his intent to kill or harm his brother. Under these circumstances, if it was error to fail to delete the portion of interview wherein the officer challenged Hames' version of the shooting, it was clearly harmless. *Stoudemire v. State*, supra at 50 (3). See also *Rowe v. State*, supra at 804 (2). Compare *Holland v. State*, 221 Ga. App. 821, 823 (1) (d) (472 SE2d 711) (1996).

4. The trial court denied a motion in limine to exclude additional evidence of a possible motive for murder. This ruling, if error, was likewise harmless. *Stoudemire v. State*, supra at 50 (3).

5. The trial court did not err by enforcing the rule of sequestration as to Hames' father. *Norman v. State*, 255 Ga. 313, 316 (3) (338 SE2d 249) (1986).

6. Pre-autopsy photographs of the victim were admissible to show the nature and extent of his wounds. *Russell v. State*, 267 Ga. 865, 867 (3) (485 SE2d 717) (1997); *Holmes v. State*, 261 Ga. 714, 715 (2) (410 SE2d 295) (1991). Compare *McCullough v. State*, 255 Ga. 672 (2) (341 SE2d 706) (1986) (post-autopsy photographs).

7. The trial court did not err in refusing to allow a defense expert to express a favorable opinion as to the credibility of Hames' pre-trial statement. The excluded testimony would have invaded the province of the jury. *Patterson v. State*, 233 Ga. App. 776, 777 (2) (505 SE2d 518) (1998).

Moreover, as previously discussed, the jury acquitted Hames of all crimes involving any intent to kill or harm his brother. Thus, the determinative factor did not prove to be the credibility of his claim that he thought he was firing at an animal, but whether his admitted act of aiming and shooting without further investigation as to the nature of the intended target was a violation of OCGA § 16-11-108 (a). Under these circumstances, even assuming that the testimony bolstering his credibility was admissible, its exclusion would be harmless error at most. See *Cook v. State*, 256 Ga. 808, 812 (2) (353 SE2d 333) (1987).

8. Hames contends that the trial court erred in refusing to allow the defense to call numerous witnesses to testify as to his good reputation for veracity. "Until the credibility of a witness is attacked, either for bad character or because of contradictory statements, the party calling him can not introduce evidence in support of his character for veracity." *Duncan v. State*, 58 Ga. App. 551 (1) (199 SE 319) (1938). At the time he made the proffer, Hames had not yet become a witness in his own defense. Therefore, the credibility of his testimony was not an issue at that point. Even after he subsequently testified, the State still did not attempt to impeach him either by showing his bad character or by showing any contradictory statements.

Hames contends that the excluded testimony nevertheless was admissible in rebuttal of the challenges to his credibility made by the interrogating officer during the pre-trial interview. However, the interview "was not offered by the State in order to prove the truth of [the officer's] provocative questioning. [Cits.]" *Rowe v. State*, supra at 803 (2). Thus, the interrogator's expression of doubts about Hames' version of the homicide were not admitted as "his theory of the case[, and were] nothing more than police questioning aimed at eliciting responses from a defendant in custody." *Rowe v. State*, supra at 803 (2). Accordingly, the State did not make a substantive challenge to Hames' credibility. Compare *Edwards v. Simpson*, 123 Ga. App. 44, 46 (1) (179 SE2d 266) (1970). Therefore, evidence of his reputation for veracity never became admissible. *Duncan v. State*, supra.

9. Hames urges that a violation of OCGA § 16-11-108 (a) cannot constitutionally constitute the predicate offense for a felony murder conviction. We considered and rejected that contention in *Chapman v. State*, supra at 358 (4), (5). Since *Chapman*, the General Assembly has not acted to eliminate the felony misuse of a firearm while hunting from those inherently dangerous crimes upon which a felony murder conviction can be based. Therefore, this enumeration is without merit.

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., and Benham, J., who concur specially, and Sears, P. J., who dissents.*

FLETCHER, Chief Justice, concurring specially.

The majority opinion summarily disposes of any error in the admission of motive evidence against Hames as harmless because he was only convicted of felony murder and misuse of a firearm while hunting, neither of which require "motive." But because improperly admitted evidence has the potential to influence a jury even if such evidence is not necessary to prove the elements of a particular crime, I write separately to examine each of Hames's enumerations of error on its merits. Because I find that the alleged errors are without merit, I concur in the judgment to affirm his convictions.[2]

1. The majority opinion improperly limits *Stoudemire v. State*[3] to cases involving insurance. While *Stoudemire* did involve evidence of insurance that allegedly went to motive, nothing in its rationale suggests that evidence relating to insurance is the *only* evidence that may be irrelevant and highly prejudicial. Indeed, in *Brown v. State*,[4] a case not involving insurance evidence, this Court relied upon *Stoudemire*. In *Brown*, the Court cited *Stoudemire* for the proposition that "evidence of a defendant's motive which is not material to his criminal liability is irrelevant and inadmissible."[5] Furthermore, by focusing on the fact that the defendant was convicted of felony murder and not malice murder, the majority perpetuates the erroneous dicta of *Stoudemire* that confuses motive with intent. Motive is not an element of either malice murder or felony murder,[6] yet the prosecution is generally entitled to offer evidence of motive.[7]

Rather than rely on a universal rule that improper evidence of motive is harmless when a defendant is convicted of felony murder, I

---

[2] Arguments regarding whether OCGA § 16-11-108 should be used to support a conviction for felony murder are foreclosed by this Court's opinion in *Chapman v. State*, 266 Ga. 356 (467 SE2d 497) (1996).

[3] 261 Ga. 49 (401 SE2d 482) (1991).

[4] *Brown v. State*, 270 Ga. 601 (512 SE2d 260) (1999).

[5] Id. at 602.

[6] *Coates v. State*, 255 Ga. 183 (336 SE2d 255) (1985).

[7] *Brown*, 270 Ga. at 602.

would reaffirm *Brown*'s holding that "evidence of a defendant's motive which is not material to his criminal liability is irrelevant and inadmissible."[8] I would also reaffirm *Stoudemire*'s holding that where the prosecution offers improper motive evidence, the trial court and this Court must consider whether the evidence has "the enormous potential for so infecting and inflaming the trial process that fundamental fairness [could] be easily compromised."[9] Therefore, Hames's enumerations of error as to the admission of motive evidence require examination on their merits.

2. (a) Hames contends that the writings on his wall used by the State as motive evidence were illegally seized because they were beyond the scope of the search warrant. But items not specifically listed in a search warrant may be seized if in plain view.[10] Hames also argues that the admission of these writings improperly placed his character at issue. Motive evidence "is not rendered inadmissible merely by the fact that it incidentally places the defendant's character in issue."[11] The writings were relevant to the State's theory that Hames intentionally shot the victim because the victim was not living in accordance with Hames's religious and moral beliefs. The State had the right to present evidence of motive in its prosecution of Hames for malice murder, and it was up to the jury whether or not to believe the State's theory.

(b) Hames also contends that the trial court erred in admitting a statement that Hames gave police after the shooting. The trial court held a lengthy hearing to consider the statement and excluded certain portions prior to its introduction into evidence. Even if portions of the admitted statement incidentally put Hames's character in issue, the statement was relevant to the State's theory that the shooting was intentional and the trial court did not abuse its discretion in admitting it.[12]

(c) Finally Hames contends that the trial court erred in allowing evidence that the victim used marijuana and was a peeping tom. Again, however, the State's theory was that Hames intentionally shot the victim because he was not living in accordance with Hames's

---

[8] Id.

[9] *Stoudemire*, 261 Ga. at 50.

[10] *Brannan v. State*, 275 Ga. 70, 73 (561 SE2d 414) (2002).

[11] See, e.g., *Fann v. State*, 275 Ga. 756, 757-758 (571 SE2d 774) (2002); *Whitener v. State*, 261 Ga. 567, 568 (407 SE2d 735) (1991) (admission of notebook containing hieroglyphic religious drawings and references to the occult proper because relevant to motive).

[12] *Ritter v. State*, 272 Ga. 551, 554 (532 SE2d 692) (2000) ("trial court did not abuse its discretion in admitting the challenged testimony as the evidence was relevant to [defendant's] motive . . .").

beliefs. This evidence was relevant to the State's theory of motive and the trial court did not abuse its discretion in admitting it.

For the above reasons, I find that the majority opinion reaches the right result but uses the wrong reasoning. The majority opinion should not abandon our warning in *Stoudemire* that the erroneous admission of "unnecessary" evidence can, in certain circumstances, so inflame a jury as to require a new trial.

I am authorized to state that Justice Benham joins in this special concurrence.

SEARS, Presiding Justice, dissenting.

I respectfully dissent to the majority opinion based upon the reasons outlined in my dissent to *Chapman v. State*, 266 Ga. 356 (467 SE2d 497) (1996).

DECIDED JUNE 7, 2004 —
RECONSIDERATION DENIED JULY 12, 2004.

*James E. Millsaps*, for appellant.

*W. Kendall Wynne, Jr.*, District Attorney, *Thurbert E. Baker*, Attorney General, *Raina Nadler*, Assistant Attorney General, for appellee.