### A00A2073. AUSTIN v. THE STATE.
(540 SE2d 710)

BARNES, Judge.

Hughdonn Austin appeals his conviction of cruelty to a child, alleging that the admission of evidence regarding a similar transac-

tion of which he had been previously acquitted constitutes reversible error. He also argues that the trial court erred in failing, sua sponte, to give a charge on accident. Finding no error, we affirm.

Construed to support the verdict, the evidence showed that Austin's son came to day care on March 3, 1999, with a three-inch burn on his arm and a large bruise or mark on his forehead. His teacher testified that the child, who was four, said his father had hit him with a belt, and that he got burned when he was hit with a hot comb. The day care manager testified that the child said he got the mark on his forehead because his daddy hit him with a broom, but that his cousin had burned his arm. Two days earlier, a teacher's assistant had brought the child to her because he had welts on his face that looked like fingerprints, which he also said were caused by his cousin. Because this was the second incident of marks on the child, the manager contacted the Department of Family & Children Services to investigate.

The DFACS investigator testified that when she first met the child, he was very verbal and made good eye contact. When she asked him about the "boo boo" on his forehead, he got very nervous and climbed in and out of his chair. At first, he said he fell outside, but then when asked where he had fallen, he said his dad had hit him. When first asked about the burn, he said his cousin burned him at his grandmother's with something that you use on your hair that is hot, but later in the conversation said his cousin did not burn him, his father did. Then he said his teacher had made the marks on his face earlier that week, but when the teacher came into the interview, he said, no, his father did it. He then said he told his mother about it and whispered to the interviewer, "My mom said nobody hit me and nobody burned me," and told him to say his cousin did it.

The DFACS investigator further testified that, when the mother came in for an interview, she initially said she did not know how the child had been injured. When the investigator told the mother that the child said his father had hit him, the mother began crying and said that was exactly what happened regarding the forehead injury.

A Clayton County detective testified that he interviewed the child, who said his father had hit him in the head with a broomstick and burned his arm with a curling iron. He interviewed the mother, who said the child told her the same thing. She admitted she told her son not to say anything to anyone, because she did not want the child taken away. Finally, the detective interviewed the defendant, who admitted "tapping" his son in the head with a broomstick and spanking him with a belt. While he was spanking him, the child wrenched free and fell to the floor, banging his head on the carpet. The detective testified that the father told him he did not have a short temper, "but for some reason, his son brings the worse [sic] out of him, and

this is why he retaliated the way he did."

The mother testified that she said what she did to the detective only because she "felt like he was telling me, if you don't say that Hughdonn Austin did this, we will put you in jail also." She thought she had noticed the bump and "likely" asked him who did it, but did not think he ever told her that it was his father. Austin testified that he only tapped the child on the head with the broom handle to get his attention, but not hard enough to make him cry out. The child still would not clean up his room, so Austin "whipped him with my belt and I grabbed him by the hand and was spanking him and he broke loose from me and his head hit the rug and probably caused that rug burn on his head." He first saw the child's burned arm while he was whipping him, but did not ask about it because he was "temporarily frustrated because [the child] wasn't cleaning his room." Austin did not treat the burn or tell the child's mother or grandmother about it.

1. Austin argues that the trial court erred by admitting testimony of an alleged similar transaction. Eight weeks earlier, the State tried Austin on similar charges that he had committed cruelty to the same child by striking him with a belt and leaving marks, and the jury acquitted him. On cross-examination in this trial, Austin's counsel asked the Fayette County DFACS investigator why she transferred the case to Clayton County. The investigator responded:

> The child was located upon the injury in Fayette County, so I would be the person from that county to go out and make initial contact. When I ascertained that the child jurisdictionally lived in another county, I called that county. *They already had an open case on the family* and they came and got the child. They confirmed that he did live in their county.

(Emphasis supplied.)

Defense counsel did not object to the testimony or ask for curative instructions. Later in the trial, when asked about a previous statement, the mother responded, "You're asking me about my statement on the first trial. I —" The State stopped the witness and asked that she be declared hostile; the defense sought curative instructions, which the trial court gave as follows:

> Members of the jury, before we go forward, I need to instruct you on one matter. This witness in her earlier testimony made reference to a first trial. There has been an earlier trial involving some of these parties. That is not at issue here in this case. You do not know the issues that were involved in that trial, who all the parties were, or what the outcome was, and all the witnesses have been instructed not

to mention that. So please disregard that, any reference to an earlier trial, because it's completely irrelevant to this case.

Austin now argues that the reference to "an open case" along with the mother's reference to the first trial constituted double jeopardy, a constitutional error that is reversible despite the lack of objection.

In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) *Putnam v. State*, 231 Ga. App. 190, 193 (3) (498 SE2d 340) (1998).

Our Supreme Court has found reversible error when the State introduced as a similar transaction evidence that a defendant had participated in an earlier armed robbery, for which a jury found him not guilty. *Moore v. State*, 254 Ga. 674 (333 SE2d 605) (1985). The court in *Moore* declined to adopt a per se rule prohibiting any evidentiary use of independent offenses where an acquittal was obtained, but instead held that "the application of collateral estoppel requires an examination of what facts were in issue and necessarily resolved in the defendant's favor at the first trial." Id. at 676.

In this case, the trial court determined that evidence regarding the earlier trial was not permissible. However, the DFACS investigator's mention of "an open case on the family" was not a criminal case against the defendant, but a DFACS case involving the family. This reference does not constitute an exceptional circumstance warranting reversal. Likewise, the mother's mention of a "first trial," in light of the trial court's curative instructions, also does not constitute an exceptional circumstance warranting reversal.

2. Austin argues that the trial court erred in not charging the jury, sua sponte, on accident. He testified that the injury to the victim's forehead was caused when the child slipped out of his grasp while being spanked with a belt and fell on the rug. However, Austin was indicted for cruelty to children by maliciously causing the victim cruel physical and mental pain by hitting him with a broom and burning him with a curling iron. Austin's defense to those specific charges was that he caused the victim no pain when he "tapped" him on the head with a broom. He did not claim he accidentally hit the child on the head with a broom; instead, he claimed that an injury

occurred in a different, accidental manner. Austin, however, was not charged with committing any particular injury. Thus, he presented two defenses to the charge: (1) the child's injury was not caused by the broom, and (2) the child's injury was caused by an accident. As Austin's sole defense was not accident, any possible error from the trial court's failure to charge, sua sponte, on accident was harmless. *Phillips v. State*, 247 Ga. 13 (273 SE2d 606) (1981). Moreover, Austin waived any issue concerning the trial court's charge to the jury by stating that he had no exceptions when asked by the trial court.

*Judgment affirmed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 1, 2000.

*Gloria J. Hawkins*, for appellant.

*Robert E. Keller, District Attorney, Adrian Britt, Assistant District Attorney*, for appellee.