695 S.E.2d 683 (2010)
TOWRY
v.
The STATE.
No. A10A0293.
Court of Appeals of Georgia.
May 20, 2010.
*685 M. Paul Reynolds, Decatur, for appellant.
David McDade, Dist. Atty., James A. Dooley, Asst. Dist. Atty., for appellee.
BERNES, Judge.
This case arises out of allegations that Paul Eric Towry fondled the genital area of J.L., his six-year-old granddaughter, during a weekend campout at his home. The jury found Towry guilty of child molestation, and the trial court denied his amended motion for new trial. On appeal, Towry contends that his trial counsel was ineffective by failing to object to testimony of a child therapist that allegedly bolstered the credibility of J.L. and went to the ultimate issue in the case; by failing to request that the video recording of his police interview be redacted to exclude certain allegedly prejudicial comments made by the interviewing investigator; by failing to object to testimony by the investigator that allegedly bolstered the credibility of the similar transaction witnesses; by failing to object when the prosecutor asked certain defense witnesses to comment on the veracity of other witnesses; by failing to prepare and present testimony from an expert in child interviewing techniques; and by failing to request jury charges on the defenses of accident and mistake of fact. For the reasons discussed below, we affirm.
Following a criminal conviction, we construe the evidence in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent. Johnson v. State, 289 Ga.App. 206, 656 S.E.2d 861 (2008). So viewed, the evidence showed that Towry and his wife are the parents of two adult daughters, Jennifer and Sonja. According to both daughters, Towry repeatedly molested them in their pre-teen and early teenage years by fondling their private parts while their mother was absent from the residence working the night shift. In the years that followed the molestation, Jennifer and Sonja moved out of their parents' home and had their own children. Jennifer had two children: a son, M.L., and a younger daughter, J.L., the victim in this case.
*686 On Saturday, August 9, 2003, M.L. and J.L. were spending the night with their grandparents, Towry and his wife. Two other grandsons also were present, and the plan was for M.L. and the other two grandsons to sleep outside in a tent. J.L., who was six years old, also wanted to sleep in the tent, but her grandmother did not believe that it was a good idea for a little girl to sleep in a tent with three older boys. On the other hand, Towry, who had been drinking heavily that day, said that J.L. could sleep in the tent. Towry also suggested that the three boys sleep naked in the tent. After the four grandchildren entered the tent, Towry joined them inside, wearing only his underwear. Once inside the tent, J.L. kept on her nightgown, but the three boys decided to sleep naked as Towry had suggested. Although J.L. wanted to sleep beside her brother M.L., Towry insisted that she sleep on the other side of the tent next to him. While Towry remained in the tent, his wife went back inside their home to sleep.
At some point during the night, Towry reached over and began rubbing J.L. all over her body, including her genital area and buttocks, while she was lying beside him. J.L. told Towry to stop, but he would not. When J.L. attempted to leave the tent, Towry would not let her go. After Towry stopped rubbing J.L., he exited from the tent and spent the rest of the night inside his home with his wife.
The following day, Jennifer learned for the first time that her ex-husband, with whom M.L. and J.L. had been staying for the weekend, had allowed the children to spend the night at their grandparents' home. Jennifer went to pick up the children. Upon her arrival, Towry waited until they were alone and then told Jennifer that he needed to speak with her. He told her, "I've done something I'm really ashamed of and I feel bad and I need to tell you." When asked what he was referring to, Towry responded, "I touched [J.L.]."
Distraught, Jennifer inquired from J.L. whether Towry had touched her, and J.L. confirmed that he had done so. Jennifer then asked J.L. where Towry had touched her, and she responded, "Everywhere." Jennifer inquired further about what had happened, and J.L. stated that Towry "started rubbing me and then just started touching me everywhere."
After leaving with her children, Jennifer contacted the police, and a police investigator conducted separate interviews of Jennifer and J.L. later that same day. During her videotaped interview, J.L. disclosed to the investigator that Towry had rubbed her private parts the previous night, that she had told Towry to stop but he would not, and that she had tried to leave the tent but Towry would not let her. The investigator also showed J.L. a drawing depicting a female, and J.L. circled the genital area and buttocks to reflect where Towry had rubbed her. J.L. subsequently met with a child therapist on several occasions and repeatedly made disclosures consistent with what she had told her mother and the investigator.
Following J.L.'s disclosures, and after learning from Jennifer and Sonja that they also had been molested by Towry, the investigator sought and obtained a warrant for Towry's arrest. Once taken into custody, Towry agreed to speak with the investigator after being advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In a videotaped interview, Towry maintained that he had awoken in the middle of the night to find his hands upon J.L., but immediately had gotten up and left the tent once he realized that the person he was touching was not his wife. At some point during the interview, Towry denied fondling J.L., accused Jennifer and J.L. of lying about the incident, and claimed that he had only rubbed J.L.'s back. At other points, however, Towry stated that he had been shocked when he woke up and was ashamed about what had occurred. Towry also claimed that if he had done more than touch J.L.'s back, it was because he had been asleep and confused.
The detective also asked Towry about the allegations of molestation made by his two daughters. Towry first claimed that both of his daughters were lying. Towry contended that Jennifer had fabricated the allegations because she was still angry over the fact that once, when she was a teenager, they had *687 gotten into a fight when he caught her home alone with an older boy. When asked about the allegations made by Sonja, Towry responded that everyone knew she was "weird" and "different." At other times during the interview, however, Towry stated that he did not remember molesting his daughters, but that if he had done so, it was because he had a severe drug abuse problem at that point in his life.
Towry was indicted and tried for child molestation in that he "did fondle [J.L.] ... with the intent to arouse his sexual desires."[1] At trial, Jennifer and the child therapist testified regarding what J.L. had disclosed to them.[2] The interviewing investigator also testified, and his videotaped interviews of J.L. and Towry were admitted into evidence and played for the jury. Additionally, M.L. took the stand and testified that on the night in question, he was awakened by the sound of J.L. crying out, "Stop." M.L. further testified that J.L. later told him that Towry had touched her. The state also presented evidence of similar transactions, namely, testimony from Jennifer and Sonja that Towry had fondled them during their pre-teen and early teenage years. In contrast, Towry called several defense witnesses, including his wife and his son, who testified that they had separately questioned J.L. about the incident, and that J.L. had indicated to them that Jennifer had encouraged or told her to lie about what had occurred.
After hearing the conflicting testimony, the jury convicted Towry of child molestation for fondling J.L. Towry filed a motion for new trial, after which he was appointed new counsel, who filed an amended motion asserting that Towry's trial counsel had provided ineffective assistance. Following an evidentiary hearing, the trial court denied the amended motion for new trial, resulting in this appeal.
1. The evidence set forth above was sufficient to entitle any rational trier of fact to find Towry guilty beyond a reasonable doubt of child molestation as charged in the indictment. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See OCGA § 16-6-4(a)(1). The jury was authorized to consider the videotaped police interview of J.L., and the testimony of Jennifer, the child therapist, and M.L. concerning what the victim told them, as substantive evidence under the Child Hearsay Statute, OCGA § 24-3-16.[3] See Vaughn v. State, 301 Ga.App. 391, 393, 687 S.E.2d 651 (2009). The jury likewise could consider Towry's admissions to his daughter Jennifer and to the investigator who interviewed him. Furthermore, consistent with the trial court's instructions, the jury was entitled to take into account the similar transaction evidence for the purpose of showing Towry's knowledge, intent, bent of mind, and course of conduct. See Lamb v. State, 293 Ga.App. 65, 66-67, 666 S.E.2d 462 (2008). Conversely, because it is the exclusive role of the jury to assess witness credibility and resolve conflicts in the testimony, the jury was not required to believe any of the defense witnesses' testimony. See id. There was ample evidence, therefore, to sustain Towry's child molestation conviction. Jackson, 443 U.S. 307, 99 S.Ct. 2781.
2. Towry alleges that his trial counsel provided ineffective assistance. "To prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have *688 been different." (Citation and punctuation omitted.) Farris v. State, 293 Ga.App. 674, 675-676, 667 S.E.2d 676 (2008). See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We need not address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on either prong. See Brown v. State, 225 Ga.App. 49, 51(1)(b), 483 S.E.2d 318 (1997). "The trial court's finding that a defendant was afforded effective assistance of counsel must be upheld on appeal unless clearly erroneous." (Punctuation and footnote omitted.) Mohammed v. State, 295 Ga.App. 514, 515, 672 S.E.2d 483 (2009). Guided by these principles, we turn to Towry's specific allegations of ineffective assistance.
(a) Towry first contends that his trial counsel should have objected to the expert testimony of the child therapist that, based upon her clinical experience interviewing children, she did not "get any indication" during her sessions with J.L. that Jennifer had encouraged or told J.L. to lie about what had occurred. According to Towry, the clinical therapist's testimony was improper because it bolstered the credibility of J.L. and went to the ultimate issue in the case. We disagree.
It is true that "[i]n Georgia, the credibility of a witness is to be determined by the jury, and the credibility of a victim may not be bolstered by the testimony of another witness. Thus, a witness may not give an opinion as to whether the victim is telling the truth." (Punctuation and footnote omitted.) Stillwell v. State, 294 Ga.App. 805, 807(2)(a), 670 S.E.2d 452 (2008). Furthermore, "Georgia law generally precludes a witness from testifying as to his or her opinion regarding an ultimate issue in the case because to do so would invade the province of the jury." Glover v. State, 292 Ga.App. 22, 27(4), 663 S.E.2d 772 (2008).
Significantly, however, we recently held that testimony by a witness that he "did not see any evidence that [the child victim] had been coached" did not constitute bolstering of the child's credibility and did not impermissibly address the ultimate issue. Stillwell, 294 Ga.App. at 807(2)(a), 670 S.E.2d 452. See also Osborne v. State, 291 Ga.App. 711, 714(3), 662 S.E.2d 792 (2008) (trial court properly admitted expert testimony that "the child's manner of responding during the interview showed signs of spontaneity and detail that were not consistent with being coached"); Anthony v. State, 282 Ga.App. 457, 459(2), 638 S.E.2d 877 (2006) (trial court properly admitted testimony that victim did not exhibit any behaviors indicative of deception during interview). The expert testimony of the child therapist in the instant case was similar to that which we held admissible in Stillwell, 294 Ga.App. at 807(2)(a), 670 S.E.2d 452. Thus, there was no error in its admission.
The failure to pursue a futile objection does not constitute deficient performance. See Massingill v. State, 240 Ga.App. 690, 691(2), 524 S.E.2d 746 (1999). Accordingly, Towry cannot show that his trial counsel was ineffective for failing to object to the child therapist's testimony.
(b) Towry argues that his trial counsel should have timely objected, moved to strike, or requested a mistrial when the child therapist later testified that in her opinion the molestation in this case had occurred. We discern no ineffective assistance.
As the record clearly reflects, Towry's trial counsel did object to the child therapist's testimony:
STATE: Okay. You said that you probably talked about [the molestation incident with J.L.] seven different times. How many times did she tell you the same story on those occasions?
CHILD THERAPIST: Every time she told it.
STATE: What does that tell you about the story that she's telling you?
CHILD THERAPIST: The consistency of which she told it and also across the different modalities that she told it to me would indicate to me in my opinion that it did happen
DEFENSE COUNSEL: Your Honor, I'm going to object at this point before she finishes her answer.... [The law in Georgia] does not give her the authority or the *689 right to give the answer as to the veracity of the child. That, again, is a question for the jury to answer. I think that the question of whether or not any individual is telling the truth doesn't need to be bolstered one way or the other by another witness. I think that's improper for her to try to answer that question.
TRIAL COURT: I sustain the objection.
Towry argues that his trial counsel's objection was untimely, but the record shows that his counsel objected as soon as the bolstering testimony was given and before the child therapist completed her full answer. Furthermore, it was not clear from the state's initial question to the child therapist that it would necessarily elicit impermissible bolstering testimony, and so it was not unreasonable for trial counsel to wait and hear the child therapist's response to determine if an objection was warranted.
Towry also argues that his trial counsel should have moved to strike the child therapist's objectionable testimony or requested a mistrial, but it is apparent from trial counsel's testimony at the hearing on the motion for new trial that he made a strategic decision not to make any further motions. Trial counsel testified that "in my mind at that time during the trial [the objection would have] been sufficient as to what I was trying to get across to the [c]ourt and to the jury." When asked why he did not move to strike the testimony or request a mistrial, trial counsel responded, "I did not think it necessary to do that at that point because the objection had been made in the presence of the jury. The jury had heard the argument and had heard it sustained."
"Decisions regarding when and how to raise objections are generally matters of trial strategy, and such strategic decisions do not constitute deficient performance unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) Nesbitt v. State, 296 Ga.App. 139, 142(3)(d), 673 S.E.2d 652 (2009). See Dyer v. State, 278 Ga. 656, 660(7), 604 S.E.2d 756 (2004) (failure to move to strike or request mistrial can be reasonable trial strategy); Johnson v. State, 283 Ga.App. 524, 529(5), 642 S.E.2d 170 (2007) ("[C]ounsel's decision whether to move for a mistrial generally falls within the ambit of trial strategy.") (citation and punctuation omitted). Trial counsel's decision not to make any further motions was reasonable in this case. Trial counsel articulated the basis for why the child therapist's testimony was improper when he made his objection, and so the jury heard an explanation for why it should not give weight to the testimony. Trial counsel could have reasonably concluded that any further objection at that point risked simply reinforcing the child therapist's testimony in the mind of the jury. Consequently, trial counsel's decision not to further object fell within the realm of trial tactics and strategy and does not support an ineffective assistance claim. See Dyer, 278 Ga. at 660(7), 604 S.E.2d 756. See also Goldey v. State, 289 Ga.App. 198, 199-200(2)(a), 656 S.E.2d 549 (2008) (trial counsel's "decision not to object as part of a trial strategy of not magnifying the importance of certain testimony was not ineffective assistance") (footnote omitted).
(c) Towry maintains that his trial counsel should have requested that the video recording of his police interview be redacted to exclude certain comments by the interviewing investigator that he claims reflected negatively upon his character and that impermissibly bolstered the credibility of J.L. and other witnesses. Pretermitting whether trial counsel erred by not moving to redact the investigator's comments from the video recording,[4] we conclude that Towry has failed to carry his burden of establishing prejudice.
Notably, the investigator's comments in the video recording were not the sworn testimony of a trial witness, but instead "reflect[ed] only an aggressive interrogation technique designed to test the truthfulness of [Towry's] denial" of wrongdoing. Hames v. State, 278 Ga. 182, 184(3), 598 S.E.2d 459 *690 (2004). See also Rowe v. State, 276 Ga. 800, 803(2), 582 S.E.2d 119 (2003) (detective's comments during interview were "nothing more than police questioning aimed at eliciting responses from a defendant in custody"). Furthermore, Towry conceded in his police interview that he might have touched J.L. in her genital area, and even absent the statements of J.L. in her videotaped interview, there was strong circumstantial evidence that Towry acted with the requisite intent to satisfy his own sexual desires in the form of the similar transaction testimony of Towry's own daughters.[5] Under these circumstances, no reasonable probability exists that, absent the alleged error in failing to have the investigator's comments redacted, the outcome of the trial would have been different. See Hames, 278 Ga. at 184(3), 598 S.E.2d 459 (failure to redact officer's comments during interview, even if error, was harmless). See also Gates v. State, 299 Ga.App. 843, 845, 685 S.E.2d 729 (2009) (no prejudice in light of, among other things, the strong similar transaction evidence against the defendant).
(d) Towry further contends that his trial counsel should have objected to or moved to strike testimony by the investigator that there was "no doubt in [his] mind" that Towry had molested his daughters. We are unpersuaded under the circumstances here.
Notably, Towry does not contend that his counsel was ineffective for asking questions that elicited the testimony or that his counsel's line of attack was an unreasonable trial tactic. Because the investigator's testimony was elicited by trial counsel, any objection to the admission of the testimony would have been futile. See Menard v. State, 281 Ga. App. 698, 700(2), 637 S.E.2d 105 (2006) (noting that a "defendant cannot object to responsive testimony that he has elicited") (citation omitted). Since there was no basis for trial counsel to object to the testimony, the failure to object did not constitute deficient performance and cannot form the basis for an ineffective assistance claim. See id.; Woods v. State, 276 Ga.App. 99, 101, 622 S.E.2d 436 (2005).
(e) Towry asserts that his trial counsel should have objected when the prosecutor asked certain defense witnesses whether prior witnesses called by the state had lied. Towry, however, has failed to show how the prosecutor's questions or the defense witnesses' responses prejudiced him in any way, and so he cannot succeed on this ineffective assistance claim. See Tucker v. State, 228 Ga.App. 321, 325(2), 491 S.E.2d 420 (1997) (no harm demonstrated where prosecutor asked defendant on cross-examination whether a state's witness had lied).
(f) Towry argues that his trial counsel should have investigated, prepared, and presented evidence from an expert in child interviewing techniques to testify regarding the videotaped police interview of J.L. Again, we discern no ineffective assistance.
"Although ... expert testimony concerning interviewing techniques of children is admissible in molestation cases, the decision on whether to call an expert witness is one of trial strategy." (Punctuation and footnote omitted.) Nichols v. State, 288 Ga. App. 118, 124(3)(f), 653 S.E.2d 300 (2007). Trial counsel testified at the hearing on the motion for new trial that he had more than 25 years of trial experience, had handled more than a dozen felony child molestation cases, had training in forensic interviewing, and had himself conducted interviews of children in his former career as a police officer. Trial counsel further testified that he had reviewed the videotaped police interview of J.L. before trial, and that he did not believe that anything in the investigator's interviewing technique had been improper or had misled J.L. so as to warrant the presentation of an expert. Given this testimony, trial counsel's decision not to call an expert was reasonable trial strategy and does not support a claim of ineffective assistance of counsel. See id. at 124-125(3)(f), 653 S.E.2d 300; Weeks v. State, 270 Ga.App. 889, 894(3)(a), 608 S.E.2d 259 (2004); Pippins v. State, 263 *691 Ga.App. 453, 458(4)(a), 588 S.E.2d 278 (2003).[6]
(g) Towry maintains that his trial counsel should have requested jury charges on the defenses of accident and mistake of fact.[7] But Towry cannot prove ineffective assistance because there was no prejudice resulting from the failure to give these charges. Towry presented two alternative defense theories at trial: (1) he never fondled J.L. in her genital area and J.L. had been encouraged and told to lie about what had occurred by her mother Jennifer; or (2) he fondled J.L. in her genital area but lacked the requisite intent to arouse his sexual desires because he had been asleep and had mistaken J.L. for his wife. The trial court charged the jury on the essential elements of child molestation, including intent, and on the state's burden to prove every element of the crime of child molestation beyond a reasonable doubt. Because accident and mistake of fact were not Towry's sole defenses, and in light of the jury charges that were given in this case, no reasonable probability exists that, absent the alleged error, the outcome of the trial would have been different. See Phillips v. State, 247 Ga. 13, 13-14, 273 S.E.2d 606 (1981); Austin v. State, 246 Ga. App. 610, 613-614(2), 540 S.E.2d 710 (2000).
(h) Although not enumerated as error, Towry suggests that the cumulative effect of his trial court's alleged errors amounted to the denial of his right to effective assistance. As discussed above, Towry has failed to substantiate that his trial counsel was deficient in many of the respects alleged and has failed to show prejudice resulting from any of his claims of ineffective assistance. We conclude that, even considered cumulatively, the alleged errors of Towry's trial counsel did not rise to the level of ineffective assistance of counsel. See Jarvis v. State, 285 Ga. 787, 791(2)(d), n. 4, 683 S.E.2d 606 (2009).
Judgment affirmed.
BARNES, P.J., and BLACKBURN, J., concur.
NOTES
[1] Towry also was indicted on a separate count of child molestation for "sleeping in a tent with a naked child[, M.L.,] with the intent to arouse his sexual desires," but he was acquitted on that count.
[2] The state did not call J.L. as a witness, nor did the defense request that the trial court cause J.L. to be called as a witness under the procedure set forth in Sosebee v. State, 257 Ga. 298, 299, 357 S.E.2d 562 (1987).
[3] The availability of the child witness to testify is one of the prerequisites for admissibility under OCGA § 24-3-16. See Harrell v. State, 204 Ga. App. 738, 739(2), 420 S.E.2d 631 (1992). Even if the state does not call the victim as a witness, the availability requirement is met where, as here, the defense declined to have the trial court call the victim to the stand so that the parties could examine her. See Sosebee, 257 Ga. at 299, 357 S.E.2d 562; Bookout v. State, 205 Ga.App. 530(1), 423 S.E.2d 7 (1992).
[4] Compare Axelburg v. State, 294 Ga.App. 612, 615-618(2), 669 S.E.2d 439 (2008), and Holland v. State, 221 Ga.App. 821, 825(3), 472 S.E.2d 711 (1996), with Huckeba v. State, 217 Ga.App. 472, 477(5), 458 S.E.2d 131 (1995).
[5] Towry was unable to provide a plausible explanation for why his daughters would fabricate their own allegations of molestation.
[6] Although not enumerated as error, Towry also contends in the argument section of his brief that the trial court erred in denying his post-trial motion for funds to hire an expert in child interviewing techniques to testify at the hearing on his motion for new trial. "[A]n appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors." (Citation, punctuation and footnote omitted.) Tucker v. State, 299 Ga.App. 278, 280(2), 683 S.E.2d 356 (2009). In any event, as discussed above, trial counsel's decision to forego calling an expert was a matter of reasonable trial strategy in light of his pre-trial review of the video recording and his years of personal experience with forensic interviews as a defense attorney and police officer. Hence, Towry cannot show that he was prejudiced by the denial of his post-trial motion for funds to hire an expert, since expert testimony at the new trial hearing would not have changed the fact that his trial counsel made a strategic decision not to call an expert at trial. See Hall v. State, 255 Ga.App. 631, 633(3), 566 S.E.2d 374 (2002) (defendant must show prejudice resulting from trial court's denial of motion for funds to hire expert).
[7] Although Towry asserts in his compound enumeration of error that his trial counsel was ineffective for failing to request a jury charge on the alleged lesser included offenses of battery and simple battery, he does not support his ineffective assistance claim beyond this conclusory statement. "Pursuant to Court of Appeals Rule 25(a)(3), an appellant must support enumerations of error with argument and citations of authority, and mere conclusory statements are not the type of meaningful argument contemplated by Rule 25(a)(3)." (Citation and punctuation omitted.) U.S.A. Gas v. Whitfield County, 298 Ga.App. 851, 855(3), n. 3, 681 S.E.2d 658 (2009). Thus, Towry's claim is deemed abandoned.