## S11A1194. SEARS v. THE STATE.

(717 SE2d 453)

Nahmias, Justice.

Tory Sears was convicted of felony murder in connection with the death of a 16-month-old girl. On appeal, he argues that the evidence was insufficient to show he acted with the requisite mens rea and that the trial court erred by declining to instruct the jury on his proposed accident defense. We affirm.

1. The evidence presented at trial, viewed in the light most favorable to the verdict, showed the following.[1] Sears and Ebonique Ricks lived together in Clayton County with Ricks's ten-year-old son Keiyon and her sixteen-month-old twin girls Jakyila, the victim, and Jakayla. The girls were fine when Ricks left them with Sears and went to work on September 30, 2007. He took them to a cookout, where the victim was awake and attentive. However, she later threw up after eating, and so Sears took the children home.

He put the twins down for a nap, and when the victim awoke, she was whining. As he headed outside to play, Keiyon heard Sears

---

[1] The crimes occurred on September 30, 2007. On February 27, 2008, Sears was indicted for malice murder, two counts of felony murder, and the predicate felonies of aggravated battery and first-degree child cruelty. On March 17, 2010, a jury acquitted Sears of malice murder but convicted him of the other charges. The child cruelty, aggravated battery, and second felony murder convictions merged into the first felony murder conviction for sentencing purposes, and the trial court sentenced Sears to life in prison. On April 7, 2010, Sears filed a motion for new trial, which he amended on October 21, 2010. The court held a hearing on October 22, 2010, and denied the motion the same day. Sears filed a timely notice of appeal to the Court of Appeals, which transferred the case to this Court on April 11, 2011. The case was docketed in this Court for the April 2011 term and submitted for decision on the briefs.

angrily yell at the victim, "shut up girl" — no surprise to Keiyon, since he had seen Sears yell at, hit, and toss the twin girls before. Some time later, Sears called Ricks at work; he had not yet called 911. He told her that when they came home from the cookout, he put the victim down in the playpen and went to another room to get medicine for her, and when he returned, the victim was unresponsive. He claimed that he grabbed the child and shook her in a failed attempt to resuscitate her. He later told the victim's grandmother that the victim's "eyes were rolling around in her head" and that he poured water on her, hit her, and shook her to try to wake her up.

Emergency personnel took the victim to the hospital. Sears acted abnormally, sleeping and trying to leave while the victim was still being treated, prompting the victim's grandmother to call the police. Jakyila ultimately died from her injuries.

Doctors and the medical examiner testified that she died from head trauma — a "very severe brain injury" of the type normally associated with a car wreck or a fall of at least three stories. She had blood behind her eyes and between her brain and skull, likely a product of a "very fast back and forward motion with abrupt stops and starts," or, as another expert witness put it, "very violent type shaking." The victim also exhibited signs of being hit on the head. These injuries, which one doctor rated as a ten on a scale from one to ten, would have immediately resulted in signs of trauma like loss of consciousness, seizing, or difficulty breathing. The experts also testified that the victim's injuries could not have been caused by asthma, sleep apnea, vaccinations, or insect bites, as Sears's counsel had suggested. They also noted other external signs of physical abuse: bruises on the victim's head, chest, and buttocks and a torn frenulum in her mouth.

2. Sears argues that the evidence was insufficient to demonstrate that he acted with malice, as required to support a felony murder conviction based on first-degree cruelty to children or aggravated battery. See OCGA § 16-5-70 (requiring malice to convict of first-degree cruelty to children); OCGA § 16-5-24 (a) (requiring that a defendant act maliciously to be convicted of aggravated battery). However, when viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find beyond a reasonable doubt that Sears acted with the requisite mens rea and was guilty of the crime for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

3. Sears also contends that the trial court erred in refusing his

request to give the jury the pattern instruction on the defense of accident. Under OCGA § 16-2-2, a "person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." Sears asserts that his statements, claiming that he found the victim unresponsive and then shook and hit her in an innocent effort to revive her, provided the evidentiary support for an accident instruction.

Assuming without deciding that the evidence supported giving a specific instruction on accident, which does not appear to have been Sears's sole defense,[2] the trial court's decision not to do so would not require reversal under the circumstances presented. See *Tarvestad v. State*, 261 Ga. 605, 605 (409 SE2d 513) (1991) (analyzing whether the trial court's refusal to give a requested jury charge on a sole affirmative defense required reversal because the rest of the charge did not fairly present the defense); *Johnson v. State*, 253 Ga. 37, 37-38 (315 SE2d 871) (1984) (same). Here, the jury was properly and fully instructed that the State had the burden of proving beyond a reasonable doubt that Sears acted with the requisite malicious intent to commit each of the crimes charged. Indeed, the trial court repeatedly read this definition of "malice" to the jury:

> Malice means an [actual] intent to cause a particular harm charged. That is, in this case, physical pain without justification or excuse. Malice is also the wanton and willful doing of an act with awareness of a plain and strong likelihood that a particular harm may result. Intention may be shown by the circumstances connected with the offense.

---

[2] Neither the opening nor closing statements were transcribed, but Sears's counsel questioned witnesses about possible alternative causes of the victim's death, indicating that Sears also defended on the theory that the State could not prove his actions caused the victim's death. The dissent nevertheless concludes that accident was Sears' "sole defense" because it was his only "statutory defense" and because "we cannot be sure from the record on appeal that appellant had more than one defense because the parties' closing arguments were not transcribed." Dis. Op. at p. 5, & n. 4. However, "sole defenses" include causation and are not limited to affirmative defenses set forth in statutes. See, e.g., *Banks v. State*, 271 Ga. 59, 61 (518 SE2d 415) (1999) (noting that the defendant's "sole defense was that someone or something else other than [the defendant] caused [the child's] death"); *Austin v. State*, 246 Ga. App. 610, 613 (540 SE2d 710) (2000) (explaining that the defendant was not entitled to a charge on accident as his "sole defense" to a child cruelty count because he "presented two defenses to the charge: (1) the child's injury was not caused by the broom, and (2) the child's injury was caused by an accident"). Moreover, the absence of a potentially relevant part of the record is properly construed against the appellant. See *State v. Nejad*, 286 Ga. 695, 698 (690 SE2d 846) (2010) (holding that "the burden is on the party which contends the transcript does not fully disclose what transpired at trial to have the record completed at the trial court pursuant to OCGA § 5-6-41 (f)" and "[w]here the transcript is not supplemented, the complaining party does not carry its burden of showing by the record the facts necessary to establish its point").

The jury's conclusion that Sears acted with malice thus necessarily means that it would have rejected any accident defense, which is premised on the claim that he acted without any criminal intent. See, e.g., *Hannah v. State*, 278 Ga. 195, 197 (599 SE2d 177) (2004) (explaining that, because "the jury was fully charged on the State's burden to prove every element of the crime of murder, including intent," and "the jury believed Hannah to be guilty of malice murder, it could not have believed [the victim's] death to be the result of an act committed in the absence of criminal intent"); *Phillips v. State*, 247 Ga. 13, 13 (273 SE2d 606) (1981) (holding that the failure to give an accident instruction did not require reversal because the jury's decision to convict the defendant of murder necessarily meant that it concluded the defendant acted intentionally rather than by accident); *DeBerry v. State*, 241 Ga. 204, 206 (243 SE2d 864) (1978) (same). See also *Wilkie v. State*, 153 Ga. App. 609, 613 (266 SE2d 289) (1980) (same with regard to an aggravated assault conviction).[3] Moreover, the evidence that Sears acted with malicious intent was overwhelming.

The dissent asserts that *Phillips* and *DeBerry* are distinguishable because, unlike Sears, the defendants there did not request a charge on accident. That distinction may affect the decision as to whether the trial court *erred* in not giving an accident charge, because the court must do so sua sponte only where accident is the sole defense (as was likely not the case here). The dissent does not explain, however, why the way in which the error was generated (failure to give a requested charge or failure to give the same charge sua sponte) should control the analysis of whether the error was *harmless*. The dissent says we cannot "assume that the error in failing to give a charge on accident was harmless." Dis. Op. at p. 6. That is correct, which is why we have reviewed the entire jury charge and decided, consistent with precedent involving claims of accident, that the instructions "fairly present[ed] the issues, including the defendant's theory, to the jury," *Tarvestad*, 261 Ga. at 606, and given the overwhelming evidence that Sears acted with malice, the trial court's failure to give a separate accident instruction does not require reversal.

---

[3] Indeed, this Court has previously noted that

in almost every circumstance an event that transpires by reason of "misfortune or accident" lacks the essential element of "any crime," which is the existence of a "criminal scheme or undertaking, intention, or criminal negligence." Thus, it is difficult to comprehend how "any crime" can be "committed by misfortune or accident."

*Hamilton v. State*, 260 Ga. 3, 5, n. 2 (389 SE2d 225) (1990).

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., and Benham and Melton, JJ., who dissent.*

BENHAM, Justice, dissenting.

I respectfully dissent from the majority opinion's conclusion that the trial court's failure to give a requested charge on accident does not warrant reversal. Appellant made statements that he shook and hit the victim with the intent to revive her. While appellant's actions were intentional, appellant's statements suggest the actual result, the victim's death, was not. Even such slight evidence warranted an instruction on accident as the defense requested. See *Hudson v. State*, 284 Ga. 595 (4) (669 SE2d 94) (2008); *Koritta v. State*, 263 Ga. 703, 704 (438 SE2d 68) (1994); *Goodwin v. State*, 262 Ga. 903 (427 SE2d 271) (1993); *Turner v. State*, 262 Ga. 359 (2) (b) (418 SE2d 52) (1992); *Hill v. State*, 300 Ga. App. 210 (1) (684 SE2d 356) (2009). In this case, providing the instruction was paramount because the defense of accident was appellant's sole defense.[4] *Tarvestad v. State*, 261 Ga. 605 (409 SE2d 513) (1991) ("The trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge."). See also *Price v. State*, 289 Ga. 459 (712 SE2d 828) (2011) (citing *Tarvestad*, supra). Therefore, the trial court erred when it denied appellant's request for a charge on accident.

The cases cited by the majority supporting its conclusion that the failure to give the requested instruction did not amount to reversible error are distinguishable. For example, in *Phillips v. State*, 247 Ga. 13 (273 SE2d 606) (1981), the defendant did not make a request for a charge on accident. We declined to decide whether the failure to give the charge was error and noted that the failure to make a request, coupled with the fact that accident was not defendant's sole defense, would "render such possible error harmless." Id. Similarly, the defendant in *DeBerry v. State*, 241 Ga. 204 (243 SE2d 864) (1978) did not request a charge on accident. In this case, appellant requested the charge on accident before the case went to the jury for deliberation. The majority urges that because the jury was instructed on malice murder and the jury convicted appellant therefore, it would not have accepted appellant's defense of accident and, as such, the failure to give the requested charge was harmless.

---

[4] The majority argues that because appellant's counsel asked expert witnesses about other possible causes of the victim's death, appellant had more than one defense. Such questioning, however, is not a statutory defense such as accident or misfortune, but is more akin to impeachment or challenging the credibility of the expert's conclusions. In any event, as the majority acknowledges, we cannot be sure from the record on appeal that appellant had more than one defense because the parties' closing arguments were not transcribed.

If the logic of this argument is followed, however, there would never be a reason to give an accident charge in any malice murder case under any circumstance, a result which I doubt the majority actually intends. It is not for this Court to assume that the error in failing to give a charge on accident was harmless. *Goodwin v. State*, supra, 262 Ga. at 903. In fact, since the evidence was sufficient, but not overwhelming, the trial court's failure to give the charge on accident was not harmless. *Hill v. State*, supra, 300 Ga. App. at 213-214. Accordingly, I would reverse. Id.; *Goodwin v. State*, supra, 262 Ga. at 903; *Price v. State*, supra, 289 Ga. at 461-462. See also *Turner v. State*, supra, 262 Ga. at 361 (judgment reversed where trial court failed to give requested charge on accident).

I am authorized to state that Chief Justice Hunstein and Justice Melton join in this dissent.

DECIDED OCTOBER 17, 2011 —
RECONSIDERATION DENIED NOVEMBER 7, 2011.

*Charles M. Evans*, for appellant.

*Tracy Graham-Lawson, District Attorney, Billy J. Dixon, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Dana E. Wolk, Assistant Attorney General*, for appellee.