**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 20, 2013

# In the Court of Appeals of Georgia

A13A0664. GRAVES v. THE STATE.

MILLER, Judge.

Following a jury trial, Richard Graves was convicted of sexual battery (OCGA § 16-6-22.1 (b)) and aggravated sexual battery (OCGA § 16-6-22.2 (b)). Graves appeals from the denial of his motion for new trial, contending that the trial court erred in allowing the State to bolster the victim's testimony with prior consistent statements, and that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence." (Citation omitted.) *Fogerty v. State*, 304 Ga. App. 546 (1) (696 SE2d 496) (2010).

So viewed, the evidence shows that Graves was the victim's stepfather and the two resided in the same household. In February or March of 2007, the victim was asleep in her bedroom when she awoke to find Graves next to her with his hand on her thigh. When the victim jumped, Graves promptly left the victim's bedroom.

In April 2007, the victim again was sleeping in her bedroom when she was awakened by Graves. Graves's hand was on her inner thigh on the outside of her pajamas and he began caressing and massaging her thigh. The victim moved in an attempt to show Graves that she was awake and was uncomfortable with his behavior. Graves briefly stopped before he resumed moving his hand along the victim's thigh toward her vagina. When the victim moved away again, Graves got up and exited the victim's bedroom. The victim was in disbelief for some time, but she eventually told her mother about the incident. Nothing was done at this time because the victim and her mother did not believe that Graves intended to abuse the victim.

In May 2007, the victim again found herself being woken up by Graves. Graves had his hand in the victim's shorts and was attempting to get inside her underwear. When Graves reached under the victim's underwear, he placed his hand over the victim's vagina and moved his hand around. Graves then inserted a finger into the victim's vagina. The victim testified that her body "shut down" and did not move

because she was afraid that Graves might hurt her or that she would ruin things in her family. The victim stated that the entire incident lasted about 11 minutes.

When Graves finished and left the room, the victim used her cellphone to call the home phone to draw Graves towards the phone located in the kitchen. When Graves answered, the victim ran to her mother's room, woke her mother up, and told her mother what had taken place. Her mother confronted Graves, and Graves stated that he was sorry. The victim's mother told Graves to leave the house, and before he left, he apologized to the victim and stated that he did not intend to hurt her. The victim did not report the incident to law enforcement then because she did not want to "rock the boat" at that time.

The victim's mother and Graves separated, and in February 2008, the victim learned Graves had a new girlfriend. The victim decided to report the sexual abuse at this time because she became concerned that Graves might commit similar actions against his girlfriend's young children.

An investigating officer interviewed Graves over the telephone. Graves was then arrested and charged with the instant offenses. At trial, the State played a recording of the investigator's interview with Graves. The jury convicted Graves of sexual battery and aggravated sexual battery.

3

1. Graves contends that the trial court erred in allowing the State to bolster the victim's testimony with her prior statements given to the victim's mother and the investigating officer. At trial, however, Graves objected to the challenged testimony only on grounds that the testimony was cumulative of the victim's testimony and consisted of hearsay. Since Graves did not make an objection on the grounds he now asserts, he has waived his claim of improper bolstering. See *Bradley v. State*, __ Ga. __, *16 (4) (Case No. S12A1857, decided March 18, 2013); *Moore v. State*, 280 Ga. App. 894, 897 (4) (635 SE2d 253) (2006).

2. Graves also contends that his trial counsel was ineffective for failing to object to the admission of recorded statements he made to the investigating officer. We disagree.

> To prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. We need not address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on either prong. The trial court's finding that a defendant was afforded effective assistance of counsel must be upheld on appeal unless clearly erroneous.

(Citations and punctuation omitted.) *Towry v. State*, 304 Ga. App. 139, 143 (2) (695 SE2d 683) (2010).

At trial, Graves admitted that he went into the victim's bedroom to retrieve an item in May 2007; he accidently tripped and landed onto the victim's bed; he touched the victim's bottom; and he had trouble getting off the bed because of back problems. Graves's friend also testified that Graves admitted to him that Graves had tripped and fell onto the victim's bed, and that his hand went "you know where." Graves's friend testified that Graves stated that he laid in the victim's bed for about 10 minutes before leaving. This testimony was consistent with Graves's statements during the police interview. In the interview, Graves admitted to touching the victim on two different occasions, including the May 2007 incident when he claimed to have tripped and landed on the victim's bed, but stated that it was unintentional and was not sexual in nature. The investigating officer asked Graves about his attorney's letter that included statements that Graves "briefly fondled" the victim, and Graves denied ever fondling the victim.

Graves argues that his attorney should have objected to the recorded interview because it included prejudicial hearsay statements that he fondled the victim. At the motion for new trial hearing, trial counsel stated that he did not initially object to the

5

recorded interview because he was only thinking about the voluntariness of Graves' statement, and he found nothing objectionable in this respect. Trial counsel admitted that he did not consider redacting the recording to omit the attorney's reference to Graves's admission.

Assuming that trial counsel was deficient by not moving to redact the recording to omit the investigating officer's reference to the attorney's letter, Graves has nevertheless failed to carry his burden of establishing prejudice. In light of Graves's own trial testimony that he touched the victim's bottom in May 2007, and the victim's testimony about the incident, there is no reasonable probability that the outcome of the trial would have been different had the jury not heard the officer's reference to the attorney's letter. See *Towry*, supra, 304 Ga. App. at 146 (2) (c) (trial counsel's failure to request redaction of recorded police interview not prejudicial where challenged statements went to test truthfulness of defendant's statements and defendant elsewhere admitted to possibly touching victim in genital area); cf. *Hames v. State*, 278 Ga. 182, 184 (3) (2004) (failure to redact officer's comments during interview, even if error, was harmless). Consequently, the trial court did not err in concluding that Graves failed to establish ineffective assistance of counsel.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

6