**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 20, 2019**

# In the Court of Appeals of Georgia

A19A1390. PINKSTON v. THE STATE.

McFADDEN, Chief Judge.

John Aubrey Pinkston appeals from his convictions on two counts of child molestation. He challenges the admission of his statements to law enforcement officers, in which he admitted to touching the vaginal area of one of the two victims, but we find no merit in his assertion that the statements were involuntary. He argues that the trial court should have charged the jury on his defense of accident even though he did not request that charge or object to its absense, but we find no plain error. And he argues that his trial counsel was ineffective for withdrawing a requested jury charge on good character, but he has not shown that he was prejudiced by this claimed deficiency. So we affirm.

1. *Facts.*

Viewed in the light most favorable to the verdict, the trial evidence showed that Pinkston, a minister, repeatedly molested two young girls whose families attended his church. On several occasions at the church, Pinkston touched the vaginal area of E. M. while she was sitting on his lap. In those instances, he touched and sometimes rubbed E. M. beneath her clothing. E. M. was between four and six years old at the time. Pinkston also touched the vaginal area of S. C. on several occasions while she was sitting on his lap. In those instances, Pinkston touched S. C. above her clothing. S. C. was between four years old and elementary-school age at the time.

Both E. M. and S. C. made outcries about the touching. E. M.'s parents contacted law enforcement, which ultimately led to Pinkston's arrest. S. C.'s mother misunderstood the nature of the outcry and did not contact law enforcement at that time. But years later S. C. made a second outcry after learning of Pinkston's arrest in connection with his acts against E. M., and at that point law enforcement was notified. Both girls gave forensic interviews to law enforcement that were played for the jury, and both girls testified at trial about Pinkston's acts.

2. *Pinkston's statements to law enforcement officers.*

Before his arrest, Pinkston made statements to law enforcement officers in which he admitted touching E. M.'s vaginal area beneath her clothing for

2

approximately 15 seconds on a single occasion. In one of those statements, Pinkston

described the incident as a stupid mistake and stated that he was surprised E. M.

remembered it. Pinkston sought to exclude evidence of the statements, but the trial

court ruled that they were admissible and at trial the state introduced both recordings

of the statements and testimony about them. Pinkston argues that this ruling was error

because his admissions in the statements that he touched E. M. were not voluntary.

We review the ruling de novo, because the facts pertaining to Pinkston's admissions

are depicted on a video recording and are not in dispute. See *Dozier v. State*, 306 Ga.

29, 33 (4) (829 SE2d 131) (2019); *Stallings v. State*, 343 Ga. App. 135, 141-142 (2)

(806 SE2d 613) (2017). Applying that standard of review, we find no error.

"To make a confession admissible, it shall have been made voluntarily, without

being induced by another by the slightest hope of benefit or remotest fear of injury."

OCGA § 24-8-824.[1] The "'slightest hope of benefit' refers to *promises* related to

---

[1] The language of OCGA § 24-8-824 is the same as its predecessor, OCGA § 24-3-50 (2012). This is also true of two related provisions, OCGA §§ 24-8-823 (requiring evidence corroborating confessions) and 24-8-825 (permitting admission of confessions made under promise of collateral benefit), which carry into the new Evidence Code the language of their predecessors, OCGA §§ 24-3-53 (2012) and 24-3-51 (2012), respectively. "[T]here are no specific corollaries to these rules in the Federal Rules of Evidence[,]" Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence, 627 (6th ed. 2018), so we apply Georgia case law interpreting the former Code sections. *State v. Almanza*, 304 Ga. 553, 557 (2) (820 SE2d 1) (2018).

reduced criminal punishment — a shorter sentence, lesser charges, or no charges at all." *Budhani v. State*, __ Ga. __, __ (2) (b) (830 SE2d 195) (2019) (citations and punctuation omitted; emphasis supplied). Pinkston argues that he received the slightest hope of benefit because the law enforcement officers who interviewed him introduced the idea of counseling as an alternative to incarceration. But the recordings of those interviews show that the officers made Pinkston no promises regarding counseling or any other aspect of his potential prosecution or punishment. To the contrary, immediately before Pinkston admitted to touching E. M., one of the officers explicitly stated that he could not make Pinkston any promises about counseling. In a follow-up interview, after being told by an officer that he could go to jail, Pinkston again admitted that he touched E. M.

Pinkston points us to a decision, *Starr v. State*, 269 Ga. App. 466 (604 SE2d 297) (2004), overruled in part on other grounds by *Hatley v. State*, 290 Ga. 480, 483 (I) (722 SE2d 67) (2012), in which a confession of child molestation was improperly induced by hope of benefit in the form of counseling. But the facts in that case are plainly distinguishable; in their discussion of counseling, the officer in *Starr* told the defendant: "We're concerned about if this happened making sure it doesn't happen[ ] anymore. And that's not by locking you up for the rest of your life because it isn't

going to happen, I guarantee you that." *Starr*, 269 Ga. App. at 469 (2) (b). Here, the recordings of Pinkston's interviews make clear that he was offered no promise that his punishment would be reduced. "[H]e was, therefore, not offered an improper benefit under OCGA § 24-8-824." *Huff v. State*, 299 Ga. 801, 804 (2) (792 SE2d 368) (2016).

3. *Jury charge on accident.*

Pinkston argues that the trial court erred in failing to charge the jury on accident, which he argues was his sole defense against the charge that he molested E. M. "A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." OCGA § 16-2-2. Pinkston asserts that he was entitled to a charge on this principle because he lacked the necessary criminal intent to commit child molestation, arguing that he reflexively touched E. M.'s vaginal area while pushing the girl away as she tried to climb on him and painfully aggravated the site of a recent hip surgery.

Because Pinkston did not request a charge on accident or object to the trial court's failure to give such a charge, we review his claim under the plain error

doctrine. See OCGA § 17-8-58 (b); *State v. Alvarez*, 299 Ga. 213, 214 (1) (790 SE2d 66) (2016). Under that doctrine,

> the proper inquiry is whether the failure to give the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings. If all three of these questions are answered in the affirmative, the appellate court has the discretion to reverse if the error seriously affects the fairness, integrity, or public reputation of the proceedings below.

*Raines v. State*, 304 Ga. 582, 591 (3) (820 SE2d 679) (2018) (citation and punctuation omitted). As detailed below, Pinkston has not shown plain error.

First, Pinkston has not shown an obvious error in the trial court's failure, sua sponte, to charge the jury on accident, which is an affirmative defense "premised on the claim that [Pinkston] acted without any criminal intent." *Sears v. State*, 290 Ga. 1, 4 (3) (717 SE2d 453) (2011). See OCGA § 16-2-2. Our Supreme Court has held that a trial court must give an accident charge sua sponte "only where accident is the sole defense." *Sears*, supra at 4 (3).[2] But, contrary to Pinkston's argument, accident

_____

[2] We note that there is also Georgia authority stating that a trial court must charge, sua sponte, any affirmative defense raised by the evidence, and unlike the *Sears* decision cited above, this authority does not mention the "sole defense" requirement. See, e. g., *Booker v. State*, 247 Ga. 74 (274 SE2d 334) (1981); *LeMon v. State*, 290 Ga. App. 527, 530 (3) (660 SE2d 11) (2000). See also Jack Goger,

6

was not his sole defense to the charge that he molested E. M., because it was not a complete defense to that count. The state did not charge Pinkston separately for each of the acts of molestation to which E. M. testified; it charged Pinkston in a single count with one instance of "commit[ting] an immoral and indecent act upon [E. M.] . . . by touching [her] vaginal area with [his] hand[.]" As recounted above, the state presented evidence that Pinkston molested E. M. in this manner on several occasions. But Pinkston's accident defense addressed only one of those instances; he denied that the other instances had occurred. So Pinkston in fact offered two defenses to the single charge of molestation against E. M. — that one of the alleged instances was an accident and the rest of the alleged instances did not happen. If the jury accepted the accident defense but rejected the defense that the other instances did not occur, it could still find Pinkston guilty of the charge that he molested E. M. Consequently, that accident was not his sole defense against the charge that he molested E. M. See *Sears*, supra at 3 (3) n. 2 ("'[S]ole defenses' . . . are not limited to affirmative defenses set forth in statutes.").

---

Daniel's Georgia Criminal Trial Practice § 24:12 (2018-2019 ed.). To the extent this authority supports a different rule than that expressed in *Sears*, supra, Pinkston has not argued that such a rule should be applied to decide his appeal.

7

In addition, Pinkston has not shown that the trial court's failure to charge the jury on accident likely affected the outcome of the proceedings. This case involves a claim that the correct instruction was absent, not that an incorrect instruction was present. And, as explained above, the affirmative defense of accident did not provide Pinkston with a complete defense against the charge that he molested E. M. because there was evidence that Pinkston touched E. M.'s vaginal area on several occasions and Pinkston's claim of accident pertained to only one of those instances. "[G]iven the quantum of evidence, combined with the fact that the instruction was incomplete rather than overtly incorrect, (Pinkston) cannot show that the instruction likely affected the outcome of the proceedings. Accordingly, we find no plain error." *Raines*, 304 Ga. at 591-592 (3) (citation omitted). Cf. *Noel v. State*, 297 Ga. 698, 701-702 (3) (777 SE2d 449) (2015) (in deciding whether trial court's failure to charge on accident was harmless, appellate court "consider[s] the record as a whole and weigh[s] the evidence and defenses raised by appellant at trial as [appellate court] believe[s] reasonable jurors would").

4. *Ineffective assistance of counsel.*

Pinkston argues that his trial counsel was ineffective in agreeing to the trial court's decision not to give his requested jury charge on good character evidence. To

8

prevail on this claim, Pinkston must "prove that his counsel's performance was professionally deficient and that, but for the unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. [Cit.] We need not review both elements of this test if [Pinkston] fails to prove one of them." *Stripling v. State*, 304 Ga. 131, 138 (3) (b) (816 SE2d 663) (2018). See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

At trial, Pinkston requested in writing the following charge:

You have heard evidence of the character of the defendant in an effort to show that the defendant likely acted in keeping with such character or trait at pertinent times or with reference to issues in this case. This evidence has been offered in the form of (opinion of (an)other witnesse(s)), (reputation) (specific instances of conduct of the defendant showing such trait). You should consider any such evidence along with all the other evidence in deciding whether or not you have a reasonable doubt about the guilt of the defendant.

The requested charge is substantially the same as the current pattern charge. See Suggested Pattern Jury Instructions, Volume II: Criminal Cases § 1.37.10. The trial court declined to give the charge, stating at the charge conference that "[t]here

9

weren't any character witnesses." Pinkston's trial counsel agreed, stating: "No objection. There was no character evidence introduced."

Pinkston argues that this constituted deficient performance because evidence of his good character had been introduced through Pinkston's own testimony about his military service and ministerial work and his lack of a criminal record. But we need not decide whether trial counsel was deficient in this regard, because Pinkston has not shown that he was prejudiced.

Even where a charge on good character is warranted, "[i]t is only in exceptional cases where the court fails to charge relative to the good character of the accused that a new trial should be granted." *Sears v. State*, 292 Ga. 64, 72 (5) (d) (734 SE2d 345) (2012) (citation and punctuation omitted). This is not an exceptional case. The evidence against Pinkston was strong. He admitted touching E. M.'s vaginal area beneath her clothing and keeping his hand there for as long as 15 seconds. He also admitted initially lying to law enforcement officers about this touching. Although he denied touching E. M. on any other occasion and denied touching S. C.'s vaginal area on any occasion,[3] both girls described details about his repeated molestation of them, and the state presented other evidence corroborating those details, such as their

---

[3] Pinkston testified to giving S. C. "a swat on the rear end" on one occasion.

10

descriptions of the rooms in which the molestation occurred. Both E. M.'s father and brother described occasions when they saw E. M. sitting on Pinkston's lap. Another churchgoer testified to seeing S. C. "rushing" out of a room in the church looking frightened as Pinkston stood, motioning for the girl to return. E. M.'s mother testified about an incident, several months before E. M.'s outcry, when she saw Pinkston and E. M. coming out of a non-public bathroom at the church and Pinkston looked surprised to see her.

"While we have often held that a defendant fails to satisfy the second prong of *Strickland* [requiring prejudice] where the evidence is overwhelming, strong evidence of guilt can also support the conclusion that no reasonable probability of a different outcome exists." *Parker v. State*, 339 Ga. App. 285, 294 (3) (793 SE2d 173) (2016). In light of the strong evidence of Pinkston's guilt "and the adequate instructions given to the jury on the credibility of witnesses, [Pinkston] has not shown a reasonable likelihood that, absent his lawyer's [abandonment of the request to] charge on evidence of good character, the result of the trial would have been different." *Sears*, 292 Ga. at 72 (citation and punctuation omitted).

*Judgment affirmed. McMillian, P.J., and Senior Appellate Judge Herbert E. Phipps, concur*.

11